**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**James CUNNINGHAM, Appellant.**

Superior Court of Pennsylvania.

Argued June 25, 2002.
Filed July 31, 2002.

Alston B. Meade, Philadelphia, for appellant.

Eva Robertson, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before LALLY–GREEN, OLSZEWSKI, and POPOVICH, JJ.

LALLY–GREEN, J.

¶ 1 Appellant, James Cunningham, appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia following his convictions for two counts of robbery, and one count each of burglary and criminal conspiracy. We affirm.

¶ 2 The trial court found the following facts of this case:

On December 30, 1999, at 9:15 AM, Lawrence Ravenell, a retired Philadelphia police officer, and his brother, Charles, were leaving their home at 5920 Oxford Street to purchase a refrigerator when a car bumped the rear of their vehicle and someone shouted "Police." N.T. 12/19/00, pp. 74–77, 90. Mr. Ravenell identified [Appellant's] co-defendant, Holloday, as the man who approached his widow, placed a gun to the side of his head and asked "where is the numbers money?" N.T. 12/19/00, pp. 77–78. Mr. Ravenell replied he had no numbers money. Holloday reached into the car, took the keys out of the ignition

and said to a masked man, either [Appellant] or co-defendant Kennedy, who was at the other window "let's take them in the house." N.T. 12/19/00, p. 78. Once inside, Holloday went upstairs and the other man, either [Appellant] or Kennedy, took an extension cord and tied up the brothers in the basement. N.T. 12/19/00, p. 79. This man, again, either [Appellant] or Kennedy, reached into Mr. Ravenell's pocket and removed $1272 from his wallet and took the .380 Beretta which Lawrence Ravenell normally carried. N.T. 12/19/00, p. 80. Lawrence testified that he had $1272 in his wallet to purchase the refrigerator. Mr. Ravenell worked for a bar owner for whom he picked up the bar receipts and cash and delivered them to the owner. A bag containing the receipts and cash amounting to approximately $800 was in the car and was also taken. N.T. 12/19/00, pp. 84–85. Lawrence Ravenell testified he thought the men would kill him because he knew they would not find additional money in the home. N.T. 12/19/00, p. 91.

After the brothers were tied up, a third male, either [Appellant] or Kennedy, who was also masked, entered the basement and immediately went upstairs. N.T. 12/19/00, p. 83. Within a few minutes the police arrived and the man who tied up the Ravenell brothers ran upstairs. N.T. 12/19/00, p. 84.

Charles Ravenell also testified at trial. His testimony matched his brother's except that he did not see c-defendant Holloday's face. He also added that one of the masked men, either [Appellant] or Kennedy, threatened to kill him if he did not tell him where the money was. N.T. 12/19/00, pp. 122–128.

Sergeant Mark Stoots of the Philadelphia Police Department was the first officer to arrive, responding to a radio call of a home invasion in the area of 5900 Nassau Street. N.T. 12/19/00, p. 136. When Sergeant Stoots arrived, roofers who were working on a nearby property yelled to him that three black males had just taken tow black males into the rear of the house and they had guns. N.T. 12/19/00, p. 138. When Sergeant Stoots arrived at the back door to the Ravenell house, someone opened the door to which he yelled, "Police officer." N.T. 12/19/00, p. 139. The door was immediately slammed on him. N.T. 12/19/00, p. 139. After about 30 seconds Lawrence Ravenell opened the door and yelled that the men were all upstairs. N.T. 12/19/00, p. 139. When Sergeant Stoots went through the basement and upstairs, he observed Holloday running down the steps toward him. N.T. 12/19/00, p. 140. When the Sergeant said "Police Officer—Freeze" Holloday stumbled, then ran back up the stairs. N.T. 12/19/00, p. 140. Sergeant Stoots could hear several men upstairs and yelled to them to come down, that Police were on the scene. They replied "why don't you come up after us?" N.T. 12/19/00, p. 142. Sergeant Stoots notified the SWAT team when someone in the rear yelled that the men were escaping by the back window. N.T. 12/19/00, p. 143.

Ultimately, each of the defendant, [Appellant], Kennedy and Holloday were apprehended shortly after police arrived: Kennedy was caught inside the Ravenell's house—he surrendered when he was told the SWAT unit was coming in after him; [Appellant] was stopped several houses away after dangling from a porch and dropping into the driveway, he was stopped by officers, and Holloday was caught by Officer Benjamin Franklin who was responding to the radio call about the incident. N.T. 12/19/00, pp. 143–144, 146, 193–197.

Officer Stephanie Rutter testified she heard a radio call for a home invasion/robbery at the location. N.T. 12/19/00, 174. Because the Sergeant said on the radio that he was on the rear of the property, she took a position in the front, with her partner. She heard on the radio that several officers were chasing one of the perpetrators down the back alley. She and her partner went to the alley and saw [Appellant] hop over a fence with the sergeant and other officers behind him yelling "grab him." N.T. 12/19/00, 177. She and her partner grabbed [Appellant] and arrested him. N.T. 12/19/00, 177. They recovered two sets of car keys and $240.

Sergeant Shoots [sic] testified that when he heard witnesses screaming that the men were coming out of the back window, he ran down through the basement, out of the back door and observed [Appellant], dressed in red, white and blue sweats, dangling from the back porch and finally dropping into the driveway and continuing to flee. N.T. 12/19/00, 143. Sergeant Shoots followed him and saw him climb one fence, then another. The officers who were coming from the other direction apprehended him with Sergeant Stoots close behind. After his arrest, Sergeant Stoots confirmed that [Appellant] indeed was the same man he [ ] chased down the driveway. N.T. 12/19/00, 178.

All three defendants were tried together [before a jury] and convicted of *Burglary, Criminal Conspiracy,* and two counts of *Robbery.*

Trial Court Opinion, November, 2001, at 2–5.

¶ 3 On May 3, 2001, the trial court sentenced Appellant to a ten (10) to twenty (20) year consecutive term of imprisonment on each of the convictions. Appellant's aggregate sentence is forty (40) to eighty (80) years' imprisonment. Appellant filed post-sentence motions which were argued and denied. This appeal followed.

¶ 4 Appellant raises the following issues for our review:

I. Whether the Commonwealth's evidence was insufficient to prove beyond a reasonable doubt that Appellant was guilty of robbery, burglary, and criminal conspiracy where there was no direct evidence implicating Appellant and where police testimony regarding the alleged seizure of a key to an automobile involved in a robbery was specious?

II. Whether Appellant was denied his Sixth Amendment right to confront witnesses where the Commonwealth presented hearsay evidence in the form of a 911 transcript and the witness speaking on the transcript was not unavailable and could have been called to testify?

III. Whether the trial court abused its discretion by imposing an unduly harsh and excessive sentence where the sentence exceeded sentencing guidelines and the trial court did not consider Appellant's evident amenability to rehabilitation?

Appellant's Brief at vi.

¶ 5 Appellant first argues that there was insufficient evidence to support his convictions. Appellant contends that the evidence that he participated in the robberies and burglary was merely circumstantial.

"The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Heberling,* 451 Pa.Super. 119, 678 A.2d 794, 795

(Pa.Super.1996) (citing *Commonwealth v. Williams*, 539 Pa. 61, 650 A.2d 420 (1994)). In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Commonwealth v. Cassidy*, 447 Pa.Super. 192, 668 A.2d 1143, 1144 (Pa.Super.1995) (citations omitted). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548, 549 (1992) (citations and quotation marks omitted).

*Commonwealth v. Vetrini*, 734 A.2d 404, 406–407 (Pa.Super.1999).

¶ 6 Appellant does not argue that the Commonwealth failed to prove any of the elements of the crimes of robbery, burglary or criminal conspiracy. Rather, Appellant contends that the victims did not identify him as a perpetrator of the crimes and, therefore, that no evidence linked Appellant to the crimes.

¶ 7 The trial court offered the following analysis of this issue:

There was sufficient evidence to convict Appellant of these crimes. While much of the evidence is circumstantial, circumstantial evidence is sufficient evidence. The police arrived while the crime was in progress. Sergeant Stoots' identification of [Appellant] was clear and undeniable; he saw [Appellant]. attempting escape and did not lose sight of him. He maintained radio contact with his officers who were able to arrest [Appellant], again, without Sergeant Stoots losing sight of him. The testimony of the victims implicated each of the three defendants in these crimes.

Trial Court Opinion, November 2001, at 5.

¶ 8 Our review of the record reflects sufficient circumstantial evidence to prove beyond a reasonable doubt that Appellant participated in the crimes of which he was convicted. At trial, both victims testified that as they were pulling out of their driveway, another vehicle hit them and three men subsequently robbed them at gunpoint. Two of the three assailants wore masks. The assailants took the victims back into the basement of their home. The assailants bound, gagged and threatened the victims. Police arrived while the assailants were searching the home for money. The assailants fled when police arrived. Within moments, a police officer witnessed Appellant hanging from the porch roof of a house two doors away. One police officer watched as Appellant dropped to the ground and started to flee the area. Two other officers blocked Appellant's escape route and caught him. Police searched Appellant and recovered the key to the vehicle, which was used to hit the victim's car, as well as over $900 in cash. This evidence sufficiently proves that Appellant was linked to the crimes as he was one of the perpetrators of the crimes. Therefore, Appellant's claim lacks merit.

¶ 9 In addition, Appellant argues that the testimony of Officer Solomon, who

arrested Appellant and discovered that Appellant possessed the key to the car used in the robbery, was inconsistent and not credible. On issues of credibility and weight of the evidence, an appellate court defers to the findings of the trial judge, who has had the opportunity to observe the proceedings and demeanor of the witnesses. *Baldwin v. Baldwin*, 710 A.2d 610, 614–615 (Pa.Super.1998). A challenge to the weight of the evidence is limited to a review of the discretion of the trial court. *Commonwealth v. Schwenk*, 777 A.2d 1149, 1155 (Pa.Super.2001).

¶ 10 The trial court addressed the question of the weight of the evidence as it pertains to the identification of Appellant as the perpetrator as follows:

> Similarly, the verdict was not against the weight of the evidence.... Identifications were solid because the police interrupted the crime and apprehended the defendants as they attempted to flee the scene.

Trial Court Opinion, November 2001, at 5–6.

¶ 11 Our review of the record reflects that Officer Solomon did testify that during the search of Appellant, keys were discovered on his person. This testimony was corroborated by that of Officer Rutter, who assisted in the search of Appellant's person. Here, the jury, as fact-finder, was free to believe all, part or none of the evidence presented, and chose to believe the testimony of Officer Solomon. We decline Appellant's invitation to overturn that determination of credibility. Thus, this issue lacks merit.

■ ¶ 12 Appellant next argues that the trial court erred in admitting the hearsay evidence of a 911 transcript which reported the robbery. Appellant contends that

he was denied his right to confrontation of the witness.

■ ¶ 13 The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. *Commonwealth v. Thomas*, 552 Pa. 621, 717 A.2d 468, 477 (1998), *cert. denied*, 528 U.S. 827, 120 S.Ct. 78, 145 L.Ed.2d 66 (1999). Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa. Rule of Evidence 801(c). *See, Commonwealth v. Smith*, 402 Pa.Super. 257, 586 A.2d 957, 963 (1991). Hearsay testimony is *per se* inadmissible in this Commonwealth, except as provided in the Pennsylvania Rules of Evidence by other rules prescribed by the Pennsylvania Supreme Court, or by statute. *See*, Pa.R.E. 802; *Commonwealth v. Smith*, 523 Pa. 577, 568 A.2d 600, 607–08 (1989).

> When an extrajudicial statement is offered for a purpose other than proving the truth of its contents, it is not hearsay and is not excludable under the hearsay rule.

*Commonwealth v. Puksar*, 559 Pa. 358, 740 A.2d 219, 225 (1999).

■ ¶ 14 The present sense impression exception to the hearsay rule is addressed in the Pennsylvania Rules of Evidence 803(1), which provides:

> The following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness:

> (1) Present Sense Impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.[1]

---

1. The comment to the rule states that this

exception can apply even when the declarant

The present sense impression exception to the hearsay rule permits testimony of declarations concerning conditions or non-exciting events observed by the declarant. *Commonwealth v. Harper*, 419 Pa.Super. 1, 614 A.2d 1180, 1183 (1992), *appeal denied*, 533 Pa. 649, 624 A.2d 109 (1993). The observation must be made at the time of the event or so shortly thereafter that it is unlikely that the declarant had the opportunity to form the purpose of misstating his observation. *Commonwealth v. Blackwell*, 343 Pa.Super. 201, 494 A.2d 426, 431 (1985). In addition, the present sense impression does not require that the comments be made to another person also present at the scene, but may be made over the telephone. *Commonwealth v. Harris*, 442 Pa.Super. 6, 658 A.2d 392, 395 (1995).

¶ 15 In *Commonwealth v. Young*, 561 Pa. 34, 748 A.2d 166 (1999), our Supreme Court explained the following regarding the interplay between the right to confrontation of a witness and exceptions to the hearsay rule:

> With respect to the confrontation issue, the United states Supreme Court in *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), held that a statement that came within an exception to the hearsay rule would not violate the Confrontation Clause if it had sufficient "indicia of reliability."

*Young*, 748 A.2d at 177.

¶ 16 In the present case, the trial court offered the following concerning the admission of the hearsay evidence:

> The Court allowed the jury to hear the tape of the 911 call made by the roofers who were working nearby and

saw the robbery unfolding. N.T. 12/20/00, 289. The Court was satisfied that the statements were sufficiently reliable because they were made as the caller observed the events take place. According to Rule of Evidence 803, present sense impressions are not excludable under the hearsay rule even though the declarant is available as a witness. Pa. R.E. 803(1). Present Sense Impression is defined as a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. As the comment to rule 803(1) explains, the trustworthiness of the statement arises from its timing, as it reduces the chance of loss of memory or premeditated prevarication. Clearly, the statements of the roofers to the 911 operator are present sense impression: the roofers called on their cellular phones and described the events as they were happening.

Trial Court Opinion, at 6.

¶ 17 Here, Appellant concedes that the 911 statements were properly admitted under the present sense exception to the hearsay rule and Appellant does not challenge the reliability of the out of court statements. Appellant's Brief at 9. Thus, because the statements fall within the exception to the hearsay rule and they are reliable, there is no violation to the right to confront the witness. *Young*. Accordingly, Appellant's contrary claim fails.

■ ¶ 18 Finally, Appellant challenges the discretionary aspects of his sentence. Appellant specifically argues that the trial court abused its discretion in sentencing Appellant to an aggregate sentence of for-

---

is not excited or otherwise emotionally affected by the event or condition perceived. Also, the comment states that the trustworthiness of the statement arises from its timing. The comment further indicates that the require-

ment of contemporaneousness, or near contemporaneousness, reduces the chance of premeditated prevarication or loss of memory. *See*, comment to Pennsylvania Rules of Evidence 803(1).

ty (40) to eighty (80) years' imprisonment which is beyond the sentencing guidelines and amounts to a term of life imprisonment.

¶ 19 In addressing this claim we are aware that "the right to appeal a discretionary aspect of sentence is not absolute." *Commonwealth v. Barzyk*, 692 A.2d 211, 216 (Pa.Super.1997); *see also*, 42 Pa. C.S.A. § 9781(b). A party who desires to raise such a challenge must petition this Court for permission to appeal and demonstrate that there is a substantial question that the sentence is inappropriate and warrants appellate review. 42 Pa.C.S.A. § 9781(b); *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987).

¶ 20 "The determination of whether a particular issue constitutes a substantial question as to the appropriateness of sentence must be evaluated on a case-by-case basis." *Barzyk*, 692 A.2d at 216 (citation omitted). A substantial question exists where "an aggrieved party can articulate clear reasons why the sentence imposed by the trial court compromises the sentencing scheme as a whole." *Id.* Thus, in order to raise a substantial question, Appellant must advance a colorable argument that "the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.*

¶ 21 The party seeking to appeal the discretionary aspect of sentencing must first include in his or her brief a concise statement of the reasons relied upon in support of the petition for allowance of appeal. Pa.R.A.P. 2119(f). Rule 2119(f) "Argument" provides as follows:

(f) **Discretionary Aspects of Sentence.** An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

Pa.R.A.P. 2119(f). *See also, Commonwealth v. Martin*, 727 A.2d 1136, 1143 (Pa.Super.1999), *appeal denied*, 560 Pa. 722, 745 A.2d 1220 (1999).

¶ 22 We recently clarified what is required by Rule 2119(f) in *Commonwealth v. Goggins*, 748 A.2d 721 (Pa.Super.2000):

Rule 2119(f) requires only that a concise statement of reasons relied upon for allowance of appeal allow us to determine the allegation of trial court error and the immediate context of the allegation as it relates to the prescribed sentencing norms. Thus, **the Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the code is violated** (e.g., the sentence is outside the guidelines and the court did not offer any reasons either on the record or in writing, or double-counted factors already considered). Similarly, **the Rule 2119(f) statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm** (e.g., the sentence is unreasonable or the result of prejudice because it is 500 percent greater than the extreme end of the aggravated range). If the 2119(f) statement meets these requirements, we can decide whether a substantial question exists....

*Id.*, 748 A.2d at 727. (emphasis added).

¶ 23 As required by Pa.R.A.P. 2119(f), *Tuladziecki* and *Goggins*, Appellant has included in his brief a separate statement of reasons relied upon for this

appeal. Appellant argues in his 2119(f) statement that the sentence was a gross deviation from the guidelines and that the sentence was unduly harsh. Appellant asserts that the sentencing court failed to consider Appellant's amenability to rehabilitation, the recommendation of his mental health evaluation and the fact that no injuries resulted form the crime. Thus, Appellant's 2119(f) statement meets the requirements of *Goggins,* and we may consider whether a substantial question is presented.

¶ 24 A claim that the court imposed an unreasonable sentence by sentencing outside the guidelines raises a substantial question which is reviewable on appeal. *Commonwealth v. Davis,* 737 A.2d 792, 798 (Pa.Super.1999). We, thus, address Appellant's issue that the trial court abused its discretion in sentencing him outside the guidelines.

¶ 25 Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Hess,* 745 A.2d 29, 31 (Pa.Super.2000). An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. *Id., Commonwealth v. Burkholder,* 719 A.2d 346, 350 (Pa.Super.1998).

¶ 26 Furthermore, in exercising its discretion, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offenses as it relates to the impact on the life of the victim and the community, so long as he also states of record "the factual basis and specific reasons which compelled him to deviate from the guideline range." *Id.* The sentencing guidelines are merely advisory and the sentencing court may sentence a defendant outside of the guidelines so long as it places its reasons for the deviation on the record. *Hess.*

¶ 27 Here, the sentencing court offered the following commentary at sentencing:

THE COURT: As I understand it, this is a 10–five, which carries a 60 to 72 in the standard range, plus or minus 12 with a re-Fel. Although I do not wish to cause any grief to [Appellant's] family—I told counsel that I don't intend to cause them any grief, although I'm sure what I'm going to do is certainly going to cause them some grief here—on the basis of [Appellant's] record, he has five juveniles, four adults. He's got several violations of probation. He has received state sentences before. It is indicated in the presentence report that he is a career criminal, but he is a special predator on the elderly.

I want [Appellant] to know that I am going outside of the guidelines. The reason I am going outside of the guidelines are: The severity of the crime, the ages of the complainants, the victims, who were 73 and 65 years old, and completely on the basis of his past background. He has completely ignored the laws of society. I don't think this is the kind of person that we want to have on our streets. And, as I said to [Appellant's wife], he is certainly not the kind of person that I would want raising my children. It's unfortunate. He appears to have a very nice family. They have come here to support him, but [Appellant] has already done whatever he's going to do. I don't think he's the kind of person that we want to have out.

For all of those reasons, I am going outside of the guidelines in imposing he sentence I am.

Sentencing Transcript, 5/3/2001, at 12–13.

¶ 28 Here, the sentencing court thoroughly explained the need for deviating from the sentencing guidelines in fashioning Appellant's sentence. The court focused on Appellant's extensive criminal history, Appellant's failure to rehabilitate, and the need to protect society, particularly the elderly, from Appellant. We conclude that the sentencing court did not abuse its discretion in formulating Appellant's sentence. Therefore, this claim fails.

¶ 29 Judgment of sentence affirmed.