**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Jerome MOUZON, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 28, 2000.

Filed July 1, 2003.

Gerald A. Stein, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: STEVENS, LALLY-GREEN, and BECK, JJ.

OPINION BY STEVENS, J.:

¶ 1 This case returns to us on remand from the Pennsylvania Supreme Court, a plurality[1] of which found that our memorandum decision relied on the erroneous rationale that a sentence cannot, as a matter of law, be manifestly excessive when it is within statutory limits. After a review of Mouzon's claim on the merits,[2] we af-

---

**1.** *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002). In dissent, Justices Eakin and Castille opined that they understood this Court's holding to be based on both the facts and the paucity of Mouzon's prefatory statement, and not on a conclusion that the discretionary aspects of a sentence within statutory limits are, as a matter of law, unreviewable.

**2.** On page 14 of its plurality opinion, 571 Pa. at 435, 812 A.2d at 627, the Supreme Court suggests that Mouzon has complied with all statutory and procedural requirements regarding a challenge to the discretionary aspects of his sentence, and that he has articulated a substantial question so as to warrant our review of his claim. Therefore, we proceed to a review of his claim on the merits.

firm the judgment of sentence entered below.

¶ 2 Charged for his involvement in three armed robberies of neighborhood establishments, Mouzon was tried before a jury and found guilty of eight counts of robbery, eight counts of possessing an instrument of crime (PIC), and seven counts of conspiracy. On June 23, 1999, the sentencing court sentenced him to ten to twenty years for each of five robbery convictions, ten to twenty years for each of two conspiracy convictions, and two and one-half to five years for one possessing an instrument of crime conviction. All sentences represented the maximum permitted by law for the crime, and all were set to run consecutively. Mouzon claims that the resulting effective life sentence unreasonably deviates from sentencing guidelines and constitutes a manifestly excessive sentence, particularly where he was a twenty year-old, first-time offender who never once discharged his gun during his crimes. We disagree.

■■■ ¶ 3 Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Johnson*, 446 Pa.Super. 192, 666 A.2d 690 (1995). "To constitute an abuse of discretion, the sentence imposed must either exceed the statutory limits or be manifestly excessive." *Commonwealth v. Gaddis*, 432 Pa.Super. 523, 639 A.2d 462, 469 (1994) (citations omitted). In this context, an abuse of discretion is not shown merely by an error in judgment. *Commonwealth v. Kocher*, 529 Pa. 303, 602 A.2d 1308 (1992). Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. *Com-*

*monwealth v. Rodda*, 723 A.2d 212 (Pa.Super.1999).

■■■ ¶ 4 In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference. *Commonwealth v. Ellis*, 700 A.2d 948, 958 (Pa.Super.1997). Where an excessiveness claim is based on a court's sentencing outside the guideline ranges, we look, at a minimum, for an indication on the record that the sentencing court understood the suggested sentencing range. 42 Pa.C.S.A. § 9721(b); *Rodda*, 723 A.2d at 214. When the court so indicates, it may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offenses as it relates to the impact on the life of the victim and the community, so long as the court also states of record "the factual basis and specific reasons which compelled him to deviate from the guideline range." *Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa.Super.2002) (quoting *Commonwealth v. Burkholder*, 719 A.2d 346, 350 (Pa.Super.1998)).

■■ ¶ 5 In evaluating a claim of this type, an appellate court must remember that the sentencing guidelines are merely advisory, and the sentencing court may sentence a defendant outside of the guidelines so long as it places its reasons for the deviation on the record. *Cunningham*, 805 A.2d at 575. "Our Supreme Court has indicated that if the sentencing court proffers reasons indicating that its decision to depart from the guidelines is not unreasonable, we must affirm a sentence that falls outside those guidelines...." *Com-*

*monwealth v. Davis,* 737 A.2d 792, 798 (Pa.Super.1999) (citing *Commonwealth v. Smith,* 543 Pa. 566, 673 A.2d 893 (1996)).

¶ 6 In the present case, the sentencing court provided sufficient explanation for deviating from guideline ranges in setting Mouzon's sentence. At the outset, the court acknowledged that the applicable guideline range for each robbery was 28 to 40 months mitigated range, 40 to 54 months standard range, and 54 to 66 months aggravated range, which reflected an offense gravity score of ten, a prior record score of zero, and where a deadly weapon enhancement applied. The court also confirmed that it reviewed the presentence report along with letters of reference from seven correctional officers, who attested to Mouzon's commendable work ethic in his fifteen months of incarceration, and who predicted that Mouzon could be a productive member of society. N.T. 6/23/99 at 3–5. Also established was that Mouzon received his diploma through the G.E.D. program. N.T. at 3.

¶ 7 Weighing most heavily with the court, however, was Mouzon's lack of remorse and contrition, his deflection of accountability, his poor employment history due to frequent drug use, and the intense terror he brought onto a neighborhood through a series of gang-style armed robberies[3] halted only by his arrest. Ultimately, it was how this record bore on Mouzon's prospects for rehabilitation, coupled with the court's sense of duty to protect the public, that led the court to fashion the sentence it imposed.

¶ 8 In his allocution, Mouzon apologized to the court and to his family for being in his predicament, but he neither expressed sympathy for the victims nor admitted his guilt: "You know, certain stuff, you know, people can't—I am not gonna say that I did it or did not do that, but certain things happened around people you can't do nothing about." N.T. at 25. Even when Mouzon attempted a statement of contrition, he stopped short of admitting to his actions, saying only that "I got to take some sort of responsibility for what I am here for." Id. To this statement, the court responded: "I see no remorse. I see no contrition. I see no mention whatsoever of the horror that the victims in this matter must have felt. He hasn't mentioned the victims whatsoever." N.T. at 27.

¶ 9 Further influencing the court in this regard was the presentence report. Despite five positive identifications from victims and a jury verdict of guilt, Mouzon continued to deny his involvement during the presentencing psychiatric exam, where he admitted only that he knew who committed the crimes but stressed his own innocence. N.T. at 30. "[Mouzon] continues to deny that he was present when the robberies occurred. And that weighs heavily on the court, because in order to be rehabilitated, a person has to recognize that they committed a grave wrong." N.T. at 29. Mouzon's "sketchy" employment history due to a drug habit that he practiced on the job also bore on the court's decision. N.T. at 29.

¶ 10 The court then expounded on the violent manner Mouzon adopted in his rob-

---

3. As we recounted in our prior memorandum decision, the *modus operandi* of Mouzon and his co-conspirators was to overwhelm a store with an extreme show of force. Acting in groups of four or five, all members pointed revolvers and shotguns at their victims and threatened to kill them during the robberies. For his part, Mouzon would place his .44 magnum handgun directly to the side of a victim's head when demanding money. The evidence was that, on two occasions, Mouzon did this in the presence of his victim's child. In the other robbery, Mouzon screamed "give me the pouch or I am going to shoot you mother fucker," with the gun, again, placed at the victim's head.

beries and expressed its obligations to protect the neighborhood at large:

"And it ways [sic] very heavily on this Court's thinking in this matter that those weapons are being pointed at particular people, and the fact that there were so many of these robberies in quick succession. I'm also to consider the gravity of the offense as it relates to the impact on the life of the victim and on the community. And, in that regard, it weighs heavily in my thinking, and as the Commonwealth has stated, that the several victims in this matter had to watch their loved ones have a weapon placed at their heads and then robbed. And we talk about the impact. We must realize that that impact has to be one horrific impact. It has to be great. It has to be—we will never be able to measure that type of impact on how people will feel.... I've likewise considered the—as I've alluded to, the underlying offenses. That is, the string of gunpoint robberies which targeted retail businesses. Two of the robberies were in blocks—several blocks from each other. Within several blocks of the defendant's neighborhood. He's terrorizing his entire neighborhood.

N.T. at 26–27. Finally, it was in the negative light of all these factors, the court stated, that the court felt compelled to interpret Mouzon's G.E.D. and his letters of reference as an attempt to reduce sentence rather than as a genuine indication of rehabilitation.

¶ 11 The sentencing court, therefore, set sentence only after focusing on the public's need for protection, the gravity of Mouzon's offenses as related to the impact on the victims and the community, and Mouz-

on's rehabilitation. A factual basis and specific reasons compelling the court to deviate from the guideline range were made part of the record. The court, therefore, did not abuse its discretion in formulating an upward departure sentence. *See Cunningham, supra.*

 ¶ 12 Likewise, we decline to find that maximum, consecutive sentences on five of eight robbery convictions, two of seven conspiracy convictions, and one of eight PIC convictions were manifestly excessive, even though the sentence as imposed represents what will likely be a life sentence.[4] In setting sentence, a court has discretion not only to deviate from guideline ranges, as discussed *supra*, but also to run the sentence concurrently with or consecutively to other sentences being imposed. *Hoag*, 665 A.2d at 1214. Indeed, this Court has expressed concern against running sentences concurrently by way of habit, lest criminals receive "volume discounts" for their separate criminal acts. *Id.*

¶ 13 The significant sentence in this case is commensurate with the significant amount of crime that Mouzon committed. Eight lives were placed in serious jeopardy during this spree of first-degree felonies, and the fact that victims complied with Mouzon's demands to avoid execution in their children's presence should not inure to Mouzon's benefit. For each robbery, Mouzon and his cohorts conspired to assume a most extreme and terrifying presence, stopped just short of murder, and put a community in constant fear until arrests were made.

¶ 14 Furthermore, after five eyewitness identifications, a jury verdict, and ample

---

4. A challenge to the imposition of consecutive sentences does not present a substantial question regarding the discretionary aspects of a sentence. *Hoag,* 665 A.2d at 1214. Because Mouzon's claim comprises more than a bare challenge to the consecutive running of his sentences, however, we review the claim herein.

time for reflection, Mouzon defiantly continued to deny his guilt. The sentencing court witnessed Mouzon throughout these proceedings, studied his history, considered his prospective rehabilitation, and therefore was in the best possible position to determine an appropriate sentence, which it has supported with great specificity. We see no reason to disturb the sentence in this case. *See Burkholder*, 719 A.2d at 350–351 (imposition of maximum, consecutive sentences on two third-degree murder convictions not an abuse of discretion where court considered all relevant factors—including history, character, and condition of the defendant—in addition to seriousness of crime).

¶ 15 Under the facts of this case, the sentence imposed was not manifestly excessive so as to constitute too severe a punishment. Accordingly, we affirm judgment of sentence entered below.

¶ 16 Judgment of sentence affirmed.

¶ 17 Concurring Statement by BECK, J.

### CONCURRING STATEMENT BY BECK, J.:

¶ 1 I concur in the result of the majority's opinion because under our standard of review I conclude that the court did not abuse its discretion. As the majority states Mouzon's sentence amounts to a life sentence. His offenses were indeed grave and at this stage in his life Mouzon may indeed be a menace to the community and he should be placed in a position where he cannot harm anyone.

¶ 2 The majority emphasizes the need to protect the public, but it states that need overbroadly. Will the public need protection from Mouzon when he is older, for example, when he is sixty years old? Should the sentencing policy of Pennsylvania be such that in the future a sizeable portion of the jail population will be geriat-

ric? Statistics show that people in the geriatric group rarely commit crimes of violence.

¶ 3 The majority also seems to imply that the courts should not look favorably on concurrent sentencing. I must disassociate myself from that conclusion. Sentencing is left to the sound discretion of the judge, and at times that discretion will require concurrent sentences and at other times it will require consecutive sentences.