J-S17025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HASHEAM MACK-TANSMORE | |
| Appellant | No. 988 EDA 2016 |

Appeal from the Judgment of Sentence Entered December 14, 2015
In the Court of Common Pleas of Lehigh County
Criminal Division at No: CP-39-CR-0004826-2014

BEFORE:  OLSON, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 17, 2017**

Appellant Hasheam Mack-Tansmore appeals from the judgment of sentence entered in the Court of Common Pleas of Lehigh County ("trial court"), following his negotiated guilty plea to third degree murder and robbery.[1]  Appellant's counsel has filed a petition to withdraw, alleging that this appeal is wholly frivolous, and filed a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  For the reasons set forth below, we affirm Appellant's judgment of sentence, and grant counsel's petition to withdraw.

The facts and procedural history underlying this case are undisputed.  As summarized by the trial court:

_____

[1] 18 Pa.C.S.A. §§ 2502(c) and 3701(a)(1)(ii), respectively.

On September 25, 2014, the body of Diego Hernandez, age 25, was found lying in the street in the 600 block of Jay Street in Allentown. He was pronounced dead, and an autopsy determined that the cause of death was a "single gunshot wound to the torso. . . . It entered the chest area, went through the lung, and through the heart area." [N.T. Guilty Plea, 8/17/15, at 16.]

A cell phone was located in close proximity to Mr. Hernandez's body, and by examining its contents, it led to [Appellant]. The information extracted from the cell phone indicated that prior to the shooting, [Appellant] and Mr. Hernandez were arranging the sale of a pound of marijuana for approximately $3,100.

A search[]warrant was secured for 317 North Sixth Street in Allentown, where [Appellant] resided with his girlfriend, Shantel Lynch. The search revealed a partially disassembled AR-15 rifle. This rifle was not positively identified as the murder weapon, but was "capable of discharging the bullet fragments" recovered from the body of Diego Hernandez. Additionally, the search revealed a large quantity of marijuana.

The police were able to determine by interviewing Ms. Lynch and Hector Badillo, who was an eyewitness to the killing, that although [Appellant] arranged a drug transaction, he never had any intention of completing the sale of marijuana. Instead; it was always [Appellant's] intention to rip off the victim at gunpoint.

Ms. Lynch explained that [Appellant] left their apartment with a friend to get some marijuana. She knew [Appellant] had no money, and that he intended to commit a robbery. He left the apartment with a black bag that contained an AR-15, which was [Appellant's]. The other individual, who was unfamiliar to her, had a handgun.

A few hours later, they returned to the apartment with the AR-15 and marijuana. [Appellant] split the marijuana with the other individual and the two departed. He later told Ms. Lynch that the other individual "shot the boy." [**Id.** at 23.]

Mr. Badillo acknowledged that he provided the marijuana that Diego Hernandez intended to sell. They walked to the location of the intended drug transaction, and entered a burgundy Ford Explorer where the transaction was to unfold. Both of them entered the back seat with Diego Hernandez behind the passenger's seat. [Appellant] was the driver and his accomplice was seated in the passenger's seat. Mr. Badillo then provided [Appellant] with the marijuana for inspection and after [Appellant] gave it a positive review, he returned it to Mr. Badillo's possession.

- 2 -

Moments later, [Appellant] pulled out a handgun, pointed it at Mr. Badillo, and demanded the marijuana. Mr. Badillo grabbed the handgun, and a tussle ensued until the accomplice pointed "a large rifle" at him. He then made a fight or flight decision, and released the handgun. [Appellant] then proceeded to take the marijuana and $200 cash from Mr. Badillo. [Appellant] and the accomplice then turned their attention to Diego Hernandez, and Mr. Badillo was able to escape the vehicle. [Appellant] and his confederate, according to Mr. Badillo, wanted to "take stuff" from Mr. Hernandez. He heard one of them say "oh, you got a gun" and with that he heard a "loud shot." [*Id.* at 21.]

Mr. Badillo identified [Appellant] as the driver of the vehicle. . . .

During the guilty plea, [Appellant] identified the second individual in the vehicle; and also confirmed the details of Diego Hernandez's death. [Appellant] admitted that when he left the apartment with his accomplice, it was their intention to meet with Diego Hernandez and "rip him off and just rob him." [*Id.* at 32.] [Appellant] took ownership of the AR-15, but explained that by the time they arrived at the meeting place, he had exchanged guns with his accomplice. The accomplice, who[m Appellant] had picked up in Philadelphia, came armed to Allentown with the handgun.

The shooting, according to [Appellant], was precipitated by their belief that Diego Hernandez was "grabbing for a gun." [*Id.* at 34.] He claimed that Diego Hernandez and the accomplice both got out of the vehicle, and the two began "tussling" over the AR-15. It was then that [Appellant] heard "one shot." [*Id.*]

[Appellant] reiterated the details of the offense at sentencing. Although [Appellant] maintained that he did not intend to harm anyone, he admitted that two (2) loaded firearms were brought to the intended robbery. He also admitted to providing the AR-15 to his accomplice for the robbery, and returning the handgun to his accomplice after the killing of Diego Hernandez. Following the events, the two split the marijuana and [Appellant] drove his accomplice back to Philadelphia.

Trial Court Opinion, 6/9/16, at 2-5 (some internal record citations omitted).

As noted earlier, eventually Appellant pleaded guilty to third degree murder and robbery. On December 14, 2015, the trial court sentenced him to an

aggregate term of 18 to 36 years' imprisonment under the terms of his negotiated guilty plea.[2] The parties agreed that Appellant's minimum sentence would not exceed 25 years. N.T. Sentencing, 8/17/15, at 6. Following the trial court's denial of Appellant's post-sentence motion, Appellant timely appealed to this Court. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied, challenging the discretionary aspects of his sentence. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion, concluding that Appellant's issue lacked merit.

On October 19, 2016, Appellant's counsel filed in this Court a motion to withdraw as counsel and filed an **Anders** brief, wherein counsel repeats the discretionary aspects of sentencing claim:

> [I.] Whether the lower court abused its discretion by imposing sentences which were manifestly unreasonable and that the court failed to properly and fully consider all those factors including the application of **Miller v. Alabama**[, 132 S. Ct. 2455 (2012),[3]] to this case based upon the age of [Appellant]?

---

[2] For third degree murder, Appellant received a standard-range sentence of 18 to 36 years in prison, and for robbery, Appellant received a concurrent, standard-range sentence of 4 to 8 years' imprisonment.

[3] The Court in **Miller** held that "[m]andatory life without parole for those *under the age of 18* at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" **Miller**, 132 S. Ct. at 2460 (emphasis added). To the extent Appellant raises a **Miller** challenge *sub judice*, we decline to entertain it because the undisputed evidence of record demonstrates that Appellant was 18 years old at the time of Mr. Hernandez's murder. We also note that Appellant did not receive a mandatory life sentence here.

***Anders*** Brief at 7 (unnecessary capitalization omitted).

When presented with an ***Anders*** brief, this Court may not review the merits of the underlying issues without first examining counsel's petition to withdraw. ***Commonwealth v. Goodwin***, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). It is well-established that, in requesting a withdrawal, counsel must satisfy the following procedural requirements: 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) provide a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel, proceed *pro se* or raise additional arguments that the defendant considers worthy of the court's addition. ***Commonwealth v. Lilley***, 978 A.2d 995, 997 (Pa. Super. 2009).

Instantly, counsel's petition to withdraw from representation provides that counsel reviewed the record and concluded that the appeal is frivolous. Furthermore, counsel notified Appellant that he was seeking permission to withdraw and provided Appellant with copies of the petition to withdraw and his ***Anders*** brief. Counsel also advised Appellant of his right to retain new counsel, proceed *pro se*, or raise any additional points he deems worthy of this Court's attention. Accordingly, we conclude that counsel has satisfied the procedural requirements of ***Anders***.

We next must determine whether counsel's **Anders** brief complies with the substantive requirements of **Santiago**, wherein our Supreme Court held:

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. Here, our review of counsel's brief indicates that he has complied with the briefing requirements of **Santiago**. We, therefore, conclude that counsel has satisfied the minimum requirements of **Anders**/**Santiago**.

Once counsel has met his obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." **Santiago**, 978 A.2d at 355 n.5. Thus, we now turn to the merits of Appellant's appeal.

Appellant's sole issue on appeal implicates the discretionary aspects of his sentence.[4] Specifically, he argues that his sentence is manifestly unreasonable because the trial court failed to consider mitigating factors.

_____

[4] When reviewing a challenge to the trial court's discretion, our standard of review is as follows:

*(Footnote Continued Next Page)*

- 6 -

At the outset, "we note that when a defendant enters a guilty plea, he or she waives all defects and defenses except those concerning the validity of the plea, the jurisdiction of the trial court, and the legality of the sentence imposed." *Commonwealth v. Stradley*, 50 A.3d 769, 771 (Pa. Super. 2012) (citation omitted). "Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise." *Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011) (citation omitted). Differently put, a defendant may not challenge the discretionary aspects of his or her sentence, where the terms of the sentence were made part of the negotiated plea. *Commonwealth v. Baney*, 860 A.2d 127, 131 (Pa. Super. 2004), *appeal denied*, 877 A.2d 459 (Pa. 2005); *see Commonwealth v. Reid*, 117 A.3d 777, 784 (Pa. Super. 2015) (holding that a challenge to the discretionary aspects of a negotiated sentence is unreviewable).

*(Footnote Continued)* ——————

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Bowen*, 55 A.3d 1254, 1263 (Pa. Super. 2012) (quoting *Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa. Super. 2002)), *appeal denied*, 64 A.3d 630 (Pa. 2013).

Here, as noted earlier, Appellant entered into a negotiated plea agreement pursuant to which he was sentenced to 18 to 36 years' imprisonment. As a result, Appellant may not challenge on appeal the discretionary aspects of his sentence. *See Baney* and *Reid*, *supra*.

We have conducted an independent review of the record and addressed Appellant's argument on appeal. Based on our conclusions above, we agree with counsel that the issue Appellant seeks to litigate in this appeal is wholly frivolous. Also, we do not discern any non-frivolous issues that Appellant could have raised. We, therefore, grant counsel's petition to withdraw and affirm the judgment of sentence.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/17/2017