J-S06029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KATIE M. TRYMBISKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH T. TRYMBISKI | : | |
| | : | |
| Appellant | : | No. 2495 EDA 2023 |

Appeal from the Order Entered August 30, 2023
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2020-61827

BEFORE:  DUBOW, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED APRIL 26, 2024**

Joseph T. Trymbiski ("Father") appeals from the order granting the petition for protection from abuse ("PFA") filed by Katie M. Trymbiski ("Mother") pursuant to the Protection from Abuse Act, 23 Pa.C.S.A. §§ 6101-22. Father contends the court erred in considering hearsay evidence and the evidence did not support a finding of abuse. We affirm.

Father and Mother are married but Mother filed for divorce in September 2020. The divorce has not been finalized. They have three minor children ("Children") and share custody. On August 22, 2023, Mother filed a PFA petition against Father. After an *ex parte* hearing, the trial court issued a temporary PFA. On August 30, 2023, the court held a hearing on the petition, where both parties were represented by counsel. At the outset of the hearing, the court ruled that it would not be taking any testimony from Children.

At the hearing, Mother testified that she has concerns about Father because "[h]e is an alcoholic" and "when he drinks, he gets abusive." N.T. 8/30/23, at 31. She stated that Father "puts his hands on [her]" and gets very angry and scary when he is intoxicated. *Id.* Mother testified that Father consistently drinks and drives with Children. *Id.* at 47. Mother testified that in the six weeks prior to the hearing, Father's "alcohol abuse ha[d] significantly increased." *Id.* at 32. She stated that Father had failed to follow the custody schedule in the last six weeks and "[h]e shows up stumbling," is intoxicated, and smells like vodka. *Id.* at 55. She stated that Children "had to call 911 on August 6th[, three weeks before the hearing,] because [Father] was convulsing on the ground" with "blood coming out of his mouth[.]" *Id.* at 32. Mother also spoke of another recent incident that occurred at Children's soccer tournament. *Id.* at 34. Mother testified that she expressed her concern to Father about his drinking and how he was consistently intoxicated and stumbling when he would get Children. *Id.* Mother stated that she and Children were in her car when this discussion occurred and Father "opened the car door, got in [her] face, screamed profanities at [her], and then slammed the door shut." *Id.* at 35. Mother said that she and Children felt scared and threatened by Father. *Id.*

Mother further testified as to previous incidents with Father that occurred when they were living together. Mother stated that she would "watch [Father] consume Tito's Vodka on a regular basis." *Id.* at 37. She described an incident where Father was so intoxicated, he mistook Mother for an intruder

and almost hit her with a baseball bat. ***Id.*** at 36. She also described another episode where they were in bed arguing about Father's drinking and Father took a pillow from the bed and held it down on Mother's head for 15 seconds. ***Id.*** at 44.

Mother stated that Father often drinks during his visits with Children. The following exchange occurred at the hearing on this issue:

> [MOTHER]: So [A.T.], our 12-year-old, she has a watch, an Apple watch, and we have a code word, strawberries, to communicate when dad is intoxicated. And he is going to put them in the car, which he often does. He puts them in the car, and he drinks and drives with them on a consistent basis.
>
> [FATHER'S COUNSEL]: Objection.
>
> THE COURT: The objection is overruled.
>
> [FATHER'S COUNSEL]: There is no foundation for this, Your Honor.
>
> [MOTHER]: She contacted me with, strawberries, and said, Can you please come get us, can you please come get us.
>
> [FATHER'S COUNSEL]: Objection.
>
> THE COURT: This is when?
>
> [FATHER'S COUNSEL]: Objection. This is hearsay. Now she is saying, come get us, come get us.
>
> THE COURT: How did she say come get us?
>
> [MOTHER]: She text[ed] me on her watch. I have screen shots of it.
>
> THE COURT: All right. And when did this take place?
>
> [MOTHER]: May 10th, May 16th, and there [are] other times she contacts me, as well. And I get calls from parents that he doesn't go to pick them up. I get calls from --

[FATHER'S COUNSEL]: Objection.

THE COURT: Sustained.

[MOTHER'S COUNSEL]: Can I have this marked, please?

THE COURT: Apparently, we have documents that are going to be marked. Let's have them marked, and then we can talk about that specific document.

. . .

THE COURT: That which is marked --

[MOTHER'S COUNSEL]: M-1.

THE COURT: Excuse me. Excuse me. That which is marked with the official marking, you can show it to the client, and you can certainly give me a copy of it.

[FATHER'S COUNSEL]: Your Honor, I would object.

THE COURT: What is the nature of the objection?

[FATHER'S COUNSEL]: It has hearsay in it.

THE COURT: I am sorry?

[FATHER'S COUNSEL]: It has hearsay in it. And the important part of the document is all hearsay. I don't think it should be reviewed or even discussed.

[MOTHER'S COUNSEL]: It is a conversation. It is a text message conversation between the child and mother.

. . .

THE COURT: You photocopied these?

[MOTHER]: Right. I screen shotted it and printed them.

THE COURT: Okay. And all right. Any further objections?

[FATHER'S COUNSEL]: Yes.

THE COURT: Which part?

[FATHER'S COUNSEL]: Well, it is a conversation between two people. She just identified it is a third-party who is not here to verify it, so it is hearsay.

- 4 -

THE COURT: Well, it comes from that -- it is that which is actually happened, and it is not just a question of a witness repeating it, which would make it hearsay. It is a question of showing what actually was communicated. And the objection as to hearsay is overruled. And you may continue with your questions.

*Id.* at 37-40.

Mother testified as to an incident that occurred on May 16, 2023, where her daughter texted her that Father was intoxicated. *Id.* at 42-43. Mother indicated that she did not feel safe getting Children alone, so her neighbor went with her. *Id.* at 42. Mother stated that when she arrived, Children were "emotionally distraught," and she observed Father to be "visibly intoxicated." *Id.* at 43. Mother said that Father opened the door to her car and "got in [her] face in front of the kids." *Id.* She felt that Father wanted to hurt her but he "was just trying to hold himself back." *Id.* at 44. She said he then slammed the car door in her face while Children watched from the back seat. *Id.* at 43-44.

When asked why she requested a PFA, Mother stated:

At this point, because of his years of alcohol abuse. And I don't feel safe around him. He often gets too close to me, puts his body against me, there has been times where he's blocked me from moving, laid on top of me so I couldn't move, put his hands around my wrist. I don't feel safe when he acts like that. I do not think the children are safe with him either.

*Id.* at 46.

Father testified that he does not drink alcohol when Children are in his custody. *Id.* at 10. He denied being an alcoholic. *Id.* at 8. Father stated that

- 5 -

when Children had to call 911 recently, he was not drinking but rather had a seizure from falling and hitting his head. *Id.* at 21, 23. He recalled an incident in which his daughter contacted Mother because she was concerned that he was drinking during the visit, but that was "an accusation that [he] get[s] a lot" by his daughter to Mother. *Id.* at 24-25. He stated that he took three breathalyzer tests a day on Soberlink for one year, which was a total of 500 to 600 tests, and passed all the tests. *Id.* at 60-61. On cross-examination, Father indicated that he would not be willing to use Soberlink again even if Mother paid for it. *Id.* at 73.

At the conclusion of the hearing, the court indicated that it did not find Father's testimony that he passed 600 Soberlink tests credible. *Id.* at 74-75. It granted a final PFA order. *Id.* at 75. The order allowed partial custody and visitation to continue but prohibited Father from driving with Children and/or be in a car with Children unless Children are being transported by an appropriate adult. This appeal followed.

Father raises the following issues:

1. Did the [c]ourt commit an error of law in finding that [Father] had committed one or more act(s) of abuse as defined in the Pennsylvania PFA Statute, 23 Pa.C.S.[A.] § 6102(a)?

2. Based upon the evidence presented at trial, could a reasonable fact finder conclude that the entry of a Protection from Abuse Order is required to protect the [Mother] and/or the named protected parties from future acts of alleged abuse?

3. Did the [c]ourt commit an error of law in considering hearsay evidence, over [Father's] counsel's objection,

- 6 -

that [Father] was intoxicated while in custody of the parties' minor children, without which evidence the [t]rial [c]ourt could not have issued a Final Protection from Abuse Order?

4. Did the [c]ourt commit an error of law in considering the contents of Exhibit marked for identification purposes as M-1, which was never admitted into evidence, without which the [t]rial [c]ourt could not have issued a Final Protection from Abuse Order?

5. Based upon the evidence presented at trial, could a reasonable fact finder could conclude that [Father] perpetrated one or more act(s) of abuse as defined in the Pennsylvania Protection from Abuse Statute, 23 Pa.C.S.[A.] § 6102(a) because [Mother's] allegations are predicated upon the claim that [Father] is an alcoholic, which fact could not be established by any admitted or admissible evidence at time of trial and which claim was clearly controverted by the evidence of [Father's] Sober Link monitoring?

6. Did the [c]ourt commit an error of law and abuse its discretion in directing [Father's] counsel to "[s]top objecting unless you have a legitimate objection" in light of [Father's] counsel's legitimate objections, thus allowing testimony without which evidence the [t]rial [c]ourt could not have issued a Final Protection from Abuse Order?

7. Did the [c]ourt commit an error of law and violate [Father's] right to due process in directing [Father's] counsel to "[s]top objecting unless you have a legitimate objection" in light of [Father's] counsel's legitimate objections, thus allowing testimony without which evidence the [t]rial [c]ourt could not have issued a Final Protection from Abuse Order.

Father's Br. at 3-4 (suggested answers omitted).

We initially note that Father has admittedly abandoned issues six and seven on appeal. *See id.* at 4. Further, the argument section of Father's brief does not correspond to the remaining five enumerated issues in violation of

Pennsylvania Rule of Appellate Procedure 2119(a). ***See*** Pa.R.A.P. 2119(a) (stating the argument section of an appellate brief "shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part -- in distinctive type or in type distinctively displayed -- the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent").

Here, the argument is divided into two sections: a challenge to the admission of evidence and a challenge to the sufficiency of the evidence to support the issuance of the PFA order. Thus, we will address the two issues that Father has briefed.

Father first argues that the trial court improperly considered hearsay evidence when it considered A.T.'s text to Mother of the codeword "strawberries," which signaled that Father was drinking and trying to drive with Children. Father's Br. at 23-24. Father contends that this out-of-court statement was admitted for the truth of the matter asserted, that is, to show that Father was drunk, and that no hearsay exception applied. ***Id.*** at 24. According to Father, "[t]he court based its findings that the [C]hildren need protection exclusively on the uncorroborated hearsay evidence." ***Id.*** at 27.

"An appellate court's standard of review of a trial court's evidentiary rulings, including rulings on the admission of hearsay[,] . . . is abuse of discretion." ***Commonwealth v. Walter***, 93 A.3d 442, 449 (Pa. 2014). Thus, we will not disturb an evidentiary ruling unless "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the

result of partiality, prejudice, bias, or ill-will, as shown by evidence of record."
***Commonwealth v. Cooper***, 941 A.2d 655, 667 (Pa. 2007) (citation omitted).

"Hearsay is an out of court statement offered to prove the truth of the matter asserted." ***Commonwealth v. Manivannan***, 186 A.3d 472, 480 (Pa.Super. 2018) (citing Pa.R.E. 801(c)). Generally, hearsay is inadmissible unless it falls within one of the exceptions to the hearsay rule. ***Id.*** One exception to the rule against hearsay is the present sense impression exception:

> A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it. When the declarant is unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the event or condition.

Pa.R.E. 803(1).

The present sense impression exception "permits testimony of declarations concerning conditions or non-exciting events observed by the declarant." ***Commonwealth v. Cunningham***, 805 A.2d 566, 573 (Pa.Super. 2002). "The observation must be made at the time of the event or so shortly thereafter that it is unlikely that the declarant had the opportunity to form the purpose of misstating his observation." ***Id.*** "[T]he present sense impression does not require that the comments be made to another person also present at the scene, but may be made over the telephone." ***Id.***

Here, A.H. texted the codeword "strawberries" to Mother to describe her observations of Father at the time of the event, which prompted Mother to retrieve Children. Thus, the statement falls within the present sense

- 9 -

impression exception to the hearsay rule. Moreover, contrary to Father's contention and as more fully set forth below, the evidence was sufficient, regardless of whether he was intoxicated at that particular time. Any error in admitting the testimony was therefore harmless. We further note that Father has not challenged the court's ruling declining to take testimony from Children. Thus, this claim is without merit.

Father next challenges the sufficiency of the evidence to support the issuance of the PFA order. He argues that his "being intoxicated while exercising custody over the [C]hildren, to the extent that such a conclusion could be reached independently of the improper hearsay evidence in this case, does not constitute abuse pursuant to the PFA statute." Father's Br. at 32. He points out that Mother admitted that she has not witnessed Father be physically abusive to Children. *Id.* Father contends that the "record fails to establish that [he] had caused bodily injury to the [C]hildren, had placed them in reasonable fear of imminent serious bodily injury, had inflicted false imprisonment, had sexually abused them, or had engaged in a course of conduct or repeatedly committed acts under circumstances that placed them in reasonable fear of bodily injury." *Id.* Father further argues that there was insufficient evidence that he abused Mother. He emphasizes that the baseball bat and pillow smothering incidents took place years ago, and the most recent allegation that he yelled profanities at Mother at a soccer tournament does not amount to abuse under the PFA statute. *Id.* at 32-33.

"In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." ***Hood-O'Hara v. Wills***, 873 A.2d 757, 759 (Pa.Super. 2005). An abuse of discretion exists where there is not "merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." ***Mescanti v. Mescanti***, 956 A.2d 1017, 1019 (Pa.Super. 2008) (citation omitted).

A plaintiff seeking a PFA order bears the burden of proving abuse by a preponderance of the evidence. 23 Pa.C.S.A. § 6107(a). On appellate review of the grant of a PFA order, "we view the evidence in the light most favorable to the petitioner and grant him the benefit of all reasonable inferences derived therefrom." ***D.H. v. B.O.***, 734 A.2d 409, 410 (Pa.Super. 1999). "In reviewing the validity of a PFA order, this Court must . . . defer to the lower court's determination of the credibility of witnesses at the hearing." ***C.H.L. v. W.D.L.***, 214 A.3d 1272, 1276-77 (Pa.Super. 2019). "[T]his Court has no authority to overturn the trial court's credibility determinations" in PFA matters. ***Karch v. Karch***, 885 A.2d 535, 537 (Pa.Super. 2005).

The PFA Act defines "abuse" in relevant part as:

> The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> . . .
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.

23 Pa.C.S.A. § 6102(a).

"In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury[.]" ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1263 (Pa.Super. 2008) (citation omitted). "The intent of the alleged abuser is of no moment." ***Id.*** Under the PFA Act, "prior instances of abuse are relevant and admissible." ***Hood-O'Hara***, 873 A.2d at 761. Further, "a person need not suffer actual injury to be considered a victim of abuse" so long as the victim is "able to demonstrate a **reasonable fear of imminent bodily injury**[.]" ***Ferri v. Ferri***, 854 A.2d 600, 603-04 (Pa.Super. 2004) (emphasis in original).

Here, the court determined that Mother and Children demonstrated a reasonable fear of imminent serious bodily injury. ***See*** Trial Court Opinion, dated 12/4/23, at 13, 14. The record supports the court's conclusion. Mother testified that Father has put his hands on her, almost struck her with a baseball bat, smothered her with a pillow, and laid on top of her so she could not move. In the six weeks before the hearing, Mother observed that Father's drinking had increased, and he would show up stumbling and visibly intoxicated. At a recent soccer tournament, Father opened the door to Mother's car, got in her face, screamed profanities at her, and slammed the door shut in the presence of Children in the car. Mother testified that she and Children felt scared and threatened by Father.

Mother also testified about another recent incident where she went to pick up Children at Father's house with her neighbor. She stated when she

arrived, Children were emotionally distraught, and Father was visibly intoxicated. Mother said that Father opened the door to the car and got in her face in front of Children. Mother testified that she believed Father wanted to hurt her but held himself back. She said he then slammed the car door in her face while Children watched from the back seat.

This evidence was sufficient to support the court's conclusion that Mother and Children had a reasonable fear of bodily harm. *See McCance v. McCance*, 908 A.2d 905, 911 (Pa.Super. 2006) (concluding the evidence was sufficient to establish that the petitioner was in reasonable fear of imminent serious bodily injury where the petitioner testified that the defendant stood in front of her car while she was in it and yelled obscenities and threats, that the defendant struck her car so hard that repairs were needed, and that the defendant had a drinking problem, anger issues and was physical with other people in the past). The court evidently credited Mother's testimony and found Father's testimony to not be credible. The court did not err or abuse its discretion in entering the PFA order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/26/2024