J-S13009-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

 COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
 : PENNSYLVANIA
 Appellee :
 :
 v. :
 :
 HEATH E. MILLER :
 :
 Appellant : No. 545 WDA 2017

 Appeal from the Judgment of Sentence October 18, 2016
 In the Court of Common Pleas of Allegheny County
 Criminal Division at No(s): CP-02-CR-0006379-2016,
 CP-02-CR-0007169-2014, CP-02-CR-0007999-2016,
 CP-02-CR-0008943-2014, CP-02-CR-0014928-2010,
 CP-02-CR-0015145-2010, CP-02-CR-0015147-2010,
 CP-02-CR-0015148-2010

BEFORE: GANTMAN, P.J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.: FILED JUNE 11, 2018

 Appellant, Heath E. Miller, appeals nunc pro tunc from the judgment of

sentence entered in the Allegheny County Court of Common Pleas, following

his negotiated guilty plea to two counts of burglary and one count each of

criminal trespass and criminal mischief.1 We affirm.

 The relevant facts and procedural history of this case are as follows. On

June 20, 2011, Appellant entered guilty pleas to multiple counts of burglary,

conspiracy to commit burglary, theft, and related offenses at four separate

Docket numbers, 14928-2010, 15145-2010, 15147-2010, and 15148-2010.

____________________________________________

1 18 Pa.C.S.A. §§ 3502(a)(2), 3503(a)(1)(ii), and 3304(a)(5), respectively.
J-S13009-18

The court sentenced Appellant on December 13, 2011, to an aggregate term

of twenty-four (24) months’ intermediate punishment, plus five (5) years’

probation. On November 18, 2014, Appellant entered negotiated guilty pleas

to multiple counts of burglary and related offenses at Docket Nos. 7169-2014

and 8943-2014. That same day, the court sentenced Appellant to an

aggregate term of eleven and one-half (11½) to twenty-three (23) months’

incarceration, plus four (4) years’ probation and compliance with the mental

health court prescription program. Subsequently, the mental health court

program assumed supervision of Appellant’s probation at the 2010 docket

numbers as well.

 Appellant committed two additional burglaries in May 2016. On

September 27, 2016, Appellant entered negotiated guilty pleas to two (2)

counts of burglary and one (1) count each of criminal trespass and criminal

mischief at Docket Nos. 6397-2016 and 7999-2016. Pursuant to an

agreement with the Commonwealth, on October 18, 2016, the court

sentenced Appellant to two (2) to four (4) years’ incarceration, plus five (5)

years’ probation at Docket Nos. 6379-2016 and 7999-2016, to be served

concurrently. On the same date, the court also revoked Appellant’s probation

at the 2010 and 2014 docket numbers and resentenced Appellant to a term

of four (4) to eight (8) years’ incarceration, consecutive to the sentences at

Docket Nos. 6379-2016 and 7999-2016. In total, the court sentenced

Appellant to an aggregate term of six (6) to twelve (12) years’ incarceration,

 -2-
J-S13009-18

plus five (5) years’ probation.

 Appellant filed a timely post-sentence motion at all eight (8) docket

numbers on October 27, 2016, which the court denied on November 8, 2016.

On March 6, 2017, Appellant filed a pro se motion for reinstatement of his

direct appeal rights nunc pro tunc and appointment of appellate counsel, which

the court granted on March 9, 2017. On April 7, 2017, Appellant filed a timely

notice of appeal nunc pro tunc at all docket numbers. The court ordered

Appellant on April 13, 2017, to file a concise statement of errors complained

of on appeal per Pa.R.A.P. 1925(b); Appellant complied on July 3, 2017,

following an extension.

 Appellant raises one issue for our review:

 IS THE IMPOSITION OF THE AGGREGATE SENTENCE OF SIX
 (6) TO TWELVE (12) YEARS’ INCARCERATION FOLLOWING
 THE IMPOSITION OF TWO NEW SENTENCES PURSUANT TO
 A NEGOTIATED PLEA, AND SIX PROBATION VIOLATION
 SENTENCES, MANIFESTLY EXCESSIVE, UNREASONABLE,
 AND AN ABUSE OF THE SENTENCING COURT’S
 DISCRETION? SPECIFICALLY, DID THE COURT IMPOSE A
 MANIFESTLY EXCESSIVE SENTENCE THAT IS WHOLLY
 UNREASONABLE AND NOT IN CONFORMITY TO THE
 SENTENCING CODE (42 PA.C.S.A. § 9721(B)), INSOFAR AS
 IT IS CONTRARY TO (1) THE SPECIFIC NEED FOR
 PROTECTION OF THE PUBLIC IN RELATION TO
 [APPELLANT]’S ACTIONS, (2) THE GRAVITY OF THE
 OFFENSE AS IT RELATES TO THE IMPACT ON THE LIVES OF
 THE VICTIMS, AND (3) [APPELLANT]’S NEED FOR
 REHABILITATION?

(Appellant’s Brief at 14).

 Appellant argues the aggregate sentence is disproportionate to his

crimes. Appellant complains the court failed to consider the relevant criteria

 -3-
J-S13009-18

contained in the Sentencing Code, which resulted in a sentence that is

inconsistent with the protection of the public, the gravity of the offense as it

relates to the impact on the community, and Appellant’s rehabilitative needs.

Appellant contends the sentencing court focused primarily on the impact of

Appellant’s crimes on the victims and Appellant’s inability to curb his drug

addiction. Appellant asserts the sentencing court failed to consider Appellant’s

allocution, his medical and psychological needs, and the progress he had made

while incarcerated awaiting sentencing. Appellant maintains the sentencing

court did not discuss on the record his medical and psychological needs.

Appellant concludes this Court should vacate his judgment of sentence and

remand this matter to the trial court with appropriate instructions. As

presented, Appellant challenges the discretionary aspects of his sentence.

See Commonwealth v. Lutes, 793 A.2d 949 (Pa.Super. 2002) (stating claim

that sentence is manifestly excessive challenges discretionary aspects of

sentencing). See also Commonwealth v. Dodge, 77 A.3d 1263, 1268

(Pa.Super. 2013), appeal denied, 625 Pa. 648, 91 A.3d 161 (2014) (stating

argument that court disregarded factors, such as rehabilitation and nature and

circumstances of offenses, implicates discretionary aspects of sentencing).

 Generally, “while a guilty plea which includes sentence negotiation

ordinarily precludes a defendant from contesting the validity of his...sentence

other than to argue that the sentence is illegal or that the sentencing court

did not have jurisdiction, open plea agreements are an exception in which a

 -4-
J-S13009-18

defendant will not be precluded from appealing the discretionary aspects of

the sentence.” Commonwealth v. Tirado, 870 A.2d 362, 365 n.5 (Pa.Super.

2005) (emphasis in original). “An ‘open’ plea agreement is one in which there

is no negotiated sentence.” Id. at 363 n.1.

 Here, Appellant entered negotiated guilty pleas at Docket Nos. 6379-

2016 and 7999-2016, as to sentencing also; and the court imposed the

agreed-upon sentences. Appellant cannot challenge the discretionary aspects

of the negotiated sentences imposed at Docket Nos. 6379-2016 and 7999-

2016. See id. Theoretically, however, Appellant can challenge the

discretionary aspects of his revocation sentences at the 2010 and 2014 docket

numbers, because those sentences do not stem from a sentence negotiation.

Id.

 When reviewing the outcome of a revocation proceeding, this Court is

limited to determining the validity of the proceeding, the legality of the

judgment of sentence imposed, and the discretionary aspects of sentencing.

Commonwealth v. Cartrette, 83 A.3d 1030 (Pa.Super. 2013) (en banc).

“In general, the imposition of a sentence following the revocation of probation

is vested within the sound discretion of the trial court, which, absent an abuse

of that discretion, will not be disturbed on appeal.” Commonwealth v.

Hoover, 909 A.2d 321, 322 (Pa.Super. 2006). Following the revocation of

probation, the court may impose a sentence of total confinement if any of the

following conditions exist: the defendant has been convicted of another crime;

 -5-
J-S13009-18

the conduct of the defendant indicates it is likely he will commit another crime

if he is not imprisoned; or, such a sentence is essential to vindicate the

authority of the court. See 42 Pa.C.S.A. § 9771(c). The Sentencing

Guidelines do not apply to sentences imposed following a revocation of

probation. Commonwealth v. Ferguson, 893 A.2d 735, 739 (Pa.Super.

2006), appeal denied, 588 Pa. 788, 906 A.2d 1196 (2006). “[U]pon

sentencing following a revocation of probation, the trial court is limited only

by the maximum sentence that it could have imposed originally at the time of

the probationary sentence.” Commonwealth v. Coolbaugh, 770 A.2d 788,

792 (Pa.Super. 2001).

 Challenges to the discretionary aspects of sentencing do not entitle an

appellant to an appeal as of right. Commonwealth v. Sierra, 752 A.2d 910

(Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing

issue:

 [W]e conduct a four-part analysis to determine: (1) whether
 appellant has filed a timely notice of appeal, see Pa.R.A.P.
 902 and 903; (2) whether the issue was properly preserved
 at sentencing or in a motion to reconsider and modify
 sentence, see Pa.R.Crim.P. 720; (3) whether appellant’s
 brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether
 there is a substantial question that the sentence appealed
 from is not appropriate under the Sentencing Code, 42
 Pa.C.S.A. § 9781(b).

Commonwealth v. Evans, 901 A.2d 528, 533 (Pa.Super. 2006), appeal

denied, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). “The

determination of what constitutes a substantial question must be evaluated

 -6-
J-S13009-18

on a case-by-case basis.” Commonwealth v. Anderson, 830 A.2d 1013,

1018 (Pa.Super. 2003). A substantial question exists “only when the appellant

advances a colorable argument that the sentencing judge’s actions were

either: (1) inconsistent with a specific provision of the Sentencing Code; or

(2) contrary to the fundamental norms which underlie the sentencing

process.” Sierra, supra at 912-13. An allegation that the sentencing court

failed to consider certain mitigating factors, absent more, does not raise a

substantial question for our review. Commonwealth v. Rhoades, 8 A.3d

912, 918-19 (Pa.Super. 2010), appeal denied, 611 Pa. 651, 25 A.3d 328

(2011), cert. denied, 565 U.S. 1263, 132 S.Ct. 1746, 182 L.Ed.2d 536 (2012).

“[C]laims that a penalty is excessive and/or disproportionate to the offense

can raise substantial questions.” Commonwealth v. Malovich, 903 A.2d

1247, 1253 (Pa.Super. 2006). See also Commonwealth v. Vega, 850 A.2d

1277 (Pa.Super. 2004) (providing claim that sentence is manifestly excessive

and disproportionate to crime, particularly in light of facts surrounding criminal

episode and appellant’s background, raises substantial question).

 Pursuant to Section 9721(b), “the court shall follow the general principle

that the sentence imposed should call for confinement that is consistent with

the protection of the public, the gravity of the offense as it relates to the

impact on the life of the victim and on the community, and the rehabilitative

needs of the defendant.” 42 Pa.C.S.A. § 9721(b). “[T]he court shall make as

part of the record, and disclose in open court at the time of sentencing, a

 -7-
J-S13009-18

statement of the reason or reasons for the sentence imposed.” Id.

Nevertheless, “[a] sentencing court need not undertake a lengthy discourse

for its reasons for imposing a sentence or specifically reference the statute in

question….” Commonwealth v. Crump, 995 A.2d 1280, 1283 (Pa.Super.

2010), appeal denied, 608 Pa. 661, 13 A.3d 475 (2010). Rather, the record

as a whole must reflect the sentencing court’s consideration of the facts of the

case and the defendant’s character. Id. “In particular, the court should refer

to the defendant’s prior criminal record, his age, personal characteristics and

his potential for rehabilitation.” Commonwealth v. Griffin, 804 A.2d 1, 10

(Pa.Super. 2002), appeal denied, 582 Pa. 671, 868 A.2d 1198 (2005), cert

denied, 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). See also

Commonwealth v. Carrillo-Diaz, 64 A.3d 722 (Pa.Super. 2013) (explaining

where revocation court presided over defendant’s plea hearing and original

sentencing, as well as his probation revocation hearing and sentencing, court

had sufficient information to evaluate circumstances of offense and character

of defendant when sentencing following revocation).

 Instantly, Appellant failed to raise at sentencing or in his post-sentence

motion his claims regarding: (1) the court’s failure to consider Appellant’s

allocution and progress made during incarceration; (2) the court’s unequal

consideration of sentencing factors; and (3) the aggregate sentence being

disproportionate to Appellant’s crimes. Therefore, Appellant waived those

claims on appeal. See Evans, supra.

 -8-
J-S13009-18

 Moreover, even if Appellant had properly preserved all of his sentencing

claims, he would not be entitled to relief. (See Trial Court Opinion, filed

August 23, 2017, at 6-16) (finding: Appellant’s aggregate sentence is

warranted in light of totality of circumstances; Appellant has participated in

mental health court since 2014, before which he was on probation for several

burglary convictions at 2010 docket numbers; sentencing court spent nearly

two years supervising Appellant on his six burglary cases; Appellant met with

court approximately two dozen times; court became familiar with Appellant’s

behavior, background, criminal history, and rehabilitative needs; court did not

impose current sentence upon Appellant to punish him for relapsing; while he

participated in mental health court program, Appellant relapsed and violated

conditions of treatment programs several times; when court confronted

Appellant about his behavior in past, Appellant apologized for his mistakes

and made excuses for his violations; court advised Appellant his conduct

would not be tolerated and warned Appellant that if he continued to violate

terms of mental health court program, court would revoke his participation in

program and resentence Appellant on his six previous burglary convictions;

subsequently, Appellant committed two burglaries in May 2016; sentencing

court has headed mental health court for over five years and is aware of

struggles mental health court participants experience when addressing

addiction and mental health issues; Appellant took advantage of court’s

willingness to work with him, while he repeatedly demonstrated disinclination

 -9-
J-S13009-18

to take treatment and recovery seriously; Appellant’s behavior placed himself

and society at risk, and demonstrated disregard for law and authority; after

most recent offenses, Appellant publicly mocked and taunted police, hid from

law enforcement, and did not seek treatment assistance; in doing so,

Appellant demonstrated substantial lack of remorse for his crimes, and

unwillingness or incapability to transition to law-abiding life; thus, Appellant’s

allocution at sentencing hearing had little impact on sentencing court;

Appellant’s failure to transition to sober, law-abiding citizen, despite numerous

opportunities afforded him, makes him threat to himself and society;

Appellant’s repeated burglaries, despite receiving drug and alcohol treatment,

mental health treatment and support of Justice Related Services, probation,

and participation in mental health court, demonstrate Appellant made

conscious choice to engage in criminal behavior; Appellant’s prior, more

lenient sentences failed to deter him from criminal activity, and Appellant was

aware he would be subject to lengthier sentences if he continued to engage

in criminal activity; thus, under circumstances, current lengthier sentence is

warranted). Therefore, even if Appellant had properly preserved his issues,

we would affirm on the basis of the trial court opinion.

 Judgment of sentence affirmed.

 - 10 -
J-S13009-18

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/11/2018

 - 11 -
 Circulated 05/14/2018 02:03 PM

 IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA, CRIMINAL DIVISION

 VS. CC Nos. 2016-7999; 2016-6379; 2014-
 7169; 2010-15148; 2010-15147; 2010-
 15145; 2010-14928; 2014-8943

HEATH E. MILLER,

 Defendant.

 OPINION
 This is a direct appeal from the judgment of sentence entered on October 18,

2016, following a negotiated plea entered on September 27, 2016, at CC Nos. 2016-

7999 and 2016-6379. The Defendant pled guilty to one (1) count of Burglary (18 Pa.

C.S.A. §3502) in exchange for a two (2) to four (4) year sentence of imprisonment with

a probationary tail at CC No. 2016-7999. The Defendant also pled guilty at CC No.

2016-6379 to one (1) count of Burglary (18 Pa. C.S.A. §3502) in exchange for a two (2)

to four (4) year sentence of imprisonment with a probationary tail. Sentencing was

deferred to October 18, 2016, so that the court could sentence the Defendant on his

2016 cases at the same time that it resentenced the Defendant for his probation

violations on his six (6) other mental health court cases at CC Nos. 2014-7169, 2010-

14928, 2010-15145, 2010-15147, 2010-15148, and 2014-8943.

 1
 On October 18, 2016, the court sentenced the Defendant in accordance with the

plea agreements entered into at CC Nos. 2016-7999 and 2016-6379, and an aggregate

sentence of two (2) to four (4) years of imprisonment, followed by a five (5) year term of

probation, was imposed. The court then revoked the Defendant's probationary terms on

his six (6) other cases at CC Nos. 2014-7169, 2010-14928, 2010-15145, 2010-15147,

2010-15148, and 2014-8943. For these mental health court violations, the Defendant

received an aggregate sentence of four (4) to eight (8) years of imprisonment to be

served consecutively to the sentence of imprisonment that he received for his 2016

cases. In sum, the Defendant received a total aggregate sentence of imprisonment of

six (6) to twelve (12) years of imprisonment, with a five (5) year term of probation to

follow.

 On October 27, 2016, a Motion to Reconsider Sentence was filed. On March 6,

2017, the Defendant filed a pro se motion for appointment of counsel and requested

reinstatement of his direct appeal rights. On March 8, 2017, the court reinstated the

Defendant's appellate rights and appointed counsel to represent the Defendant in his

appeal. A Notice of Appeal was filed on April 7, 2017. Counsel was ordered to file a

Concise Statement of Errors Complained of on Appeal ("Concise Statement") by May 3,

2017. Counsel requested and received one extension of time to file the Concise

Statement.

 2
 On July 5, 2017, the Defendant, by way of counsel, filed a timely Concise

Statement, raising the following issue for review:

 A. The total aggregate sentence of 6 to 12 years' imprisonment followed by a 5
 year term of probation is unreasonable, manifestly excessive, and contrary to
 the dictates of the Sentence Code and 42 Pa. C.S.A. §9721(b). More
 specifically, the sentence was contrary to (1) the specific need for protection
 of the public in relation to Mr. Miller's actions, (2) the gravity of the offense as
 it relates to impact on the lives of the victims, and (3) Mr. Miller's need for
 rehabilitation. Despite his mental illness, Mr. Miller had been working hard to
 rehabilitate himself. His new charges were the result of a period of drug
 addiction regression. Such regression is not uncommon in the recovery
 process, [and] should not be a basis for imposing a lengthy period of
 incarceration. Mr. Miller expressed deep remorse for his actions, and made a
 statement showing critical insight into his problems, and his strong
 commitment to rehabilitating himself. While incarcerated awaiting sentencing,
 Mr. Miller made the most of his time doing pod work, Bible study, and doing
 all that was asked of him. He had no misconducts and was moved from
 maximum to minimum security. As such, Mr. Miller demonstrated that he is
 on the road to recovery, and that a lengthy period of incarceration is not
 warranted; rather, he would benefit most from a shorter period of
 incarceration, and participation in community treatment programs.
 (Concise Statement, pp. 2-3).

 The Defendant's allegation of error on appeal is without merit. The court

respectfully requests that the Defendant's sentence be upheld for the reasons that

follow.

 3
I. DISCUSSION

 It is well -settled that Isientencing is a matter vested in the sound discretion of

the sentencing judge and a sentence will not be disturbed on appeal absent a manifest

abuse of discretion." Commonwealth v. Mouzon, 828 A.2d 1126, 1128 (Pa. Super.

2003). "To constitute an abuse of discretion, the sentence imposed must either exceed

the statutory limits or be manifestly excessive." Commonwealth v. Gaddis, 639 A.2d

462, 469 (Pa. Super. 1994) (citations omitted). To that end, "an abuse of discretion may

not be found merely because an appellate court might have reached a different

conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice,

bias, or or such lack of support so as to be clearly erroneous." Commonwealth v.

Greer, 951 A.2d 346, 355 (Pa. 2008). "In determining whether a sentence is manifestly

excessive, the appellate court must give great weight to the sentencing court's

discretion." Mouzon, supra, at 1128. This deferential standard of review acknowledges

that the sentencing court is "in the best position to view the defendant's character,

displays of remorse, defiance, indifference, and the overall effect and nature of the

crime," Commonwealth v. Allen, 24 A.3d 1058, 1065 (Pa. Super. 2011) (internal

citations omitted).

 The Defendant's sentencing argument seeks to challenge the discretionary

aspects of sentencing. The court notes that "[t]he right to appeal a discretionary aspect

of sentence is not absolute." Commonwealth v. Martin, 727 A.2d 1136, 1143 (Pa.

Super. 1999). A defendant "challenging the discretionary aspects of his sentence must

 4
invoke [appellate] jurisdiction by satisfying a four-part test." Commonwealth v. Moury,

992 A.2d 162, 170 (Pa. Super. 2010). In conducting the four-part test, the appellate

court analyzes

 (1) whether appellant has filed a timely notice of appeal, see Pa. R. A. P.
 902 and 903; (2) whether the issue was properly preserved at sentencing
 or in a motion to reconsider and modify sentence, see Pa. R. Crim. P.
 [708]; (3) whether appellants brief has a fatal defect, Pa. R. A. P. 2119(f);
 and (4) whether there is a substantial question that the sentence appealed
 from is not appropriate under the Sentencing Code, 42 Pa. C. S. A. §
 9781(b). Id. at 170.

"The determination of whether there is a substantial question is made on a case -

by -case basis, and [the appellate court] will grant the appeal only when the

appellant advances a colorable argument that the sentencing judge's actions

were either: (1) inconsistent with a specific provision of the Sentencing Code; or

(2) contrary to the fundamental norms which underlie the sentencing process."

Commonwealth v. Haynes, 125 A.3d 800, 807 (Pa. Super. 2015).

 Our courts have "held on numerous occasions that a claim of inadequate

consideration of [mitigating] factors does not raise a substantial question for [] review."

Haynes, supra, at 807; Commonwealth v. Buterbauuh, 91 A.3d 1247, 1266 (Pa. Super.

2014). Furthermore, "a sentencing court generally has discretion to impose multiple

sentences concurrently or consecutively, and a challenge to the exercise of that

discretion does not ordinarily raise a substantial question." Commonwealth v. Raven, 97

A.3d 1244, 1253 (Pa. Super. 2014). Moreover, "bald claims of excessiveness due to

the consecutive nature of sentences imposed will not raise a substantial question."

 5
 (Pa. Super. 2013). Rather, "[t]he
Commonwealth v. Dodoe, 77 A.3d 1263, 1270
 sentences may raise a substantial
imposition of consecutive, rather than concurrent,
 such as where the aggregate
question in only the most extreme circumstances,
 of the crimes and the length of
sentence is unduly harsh, considering the nature

imprisonment." MOM, supra, at 171-72.

 the Defendant has failed to
 Respectfully, the reviewing court should find that
 his sentence. The Defendant's aggregate
raise a substantial question for review of
 provisions of the Sentencing Code, and it
 sentence was consistent with the sentencing
 underlie the sentencing process.
 did not conflict with the fundamental norms that
 that there exists a substantial question
 However, should the reviewing court conclude
 the reviewing court respectfully should find
 as to the appropriateness of the sentence,
 without merit because the aggregate sentence
 that the Defendant's allegation of error is
 in this case.
 imposed was justified by the totality of the circumstances

 First, and most importantly, the Defendant
 was no stranger to this court. The

 Mental Health Court ("MHC") program on
 Defendant became a participant in this court's
 program on two (2) burglary cases that were
 November 18, 2014, when he pled into the
 2014-8943. At that time, the Defendant
 before this court at CC Nos. 2014-7169 and
 Kevin G. Sasinoski at CC Nos. 2010-
 was already on probation with the Honorable

 6
15145, 2010-15147, 2010-15148, and 2010-14928 for four (4) other burglary cases.'

On December 4, 2014, Judge Sasinoski transferred the Defendant's 2010 cases to this

court so that it could assume supervision of the probationary sentences through MHC

court.

 This court spent almost two (2) years supervising the Defendant on his six (6)

separate burglary cases. During the course of that supervision, the court met with the

Defendant almost two (2) dozen times, and it became well -familiar with his behavior,

personal background, criminal history, and need for rehabilitation. The Defendant

claims that his 2016 charges were only the result of a period of drug regression and that

such regression "is not uncommon in the recovery process" and "should not be a basis

for imposing a lengthy period of incarceration." (Concise Statement, p. 3).

Respectfully, this argument minimizes the nature of the Defendant's willful conduct, and

it substantially overlooks the various other reasons that the sentence was imposed.

 The Defendant's lengthy sentence was not imposed to punish the Defendant

merely because he relapsed. Indeed, the Defendant relapsed several times throughout

his time in the MHC program, and he repeatedly violated various conditions of the

1 On December 13, 2011, Judge Sasinoski sentenced the Defendant on his 2010 cases
as follows: At CC # 2010-15145, the Defendant was placed into the state intermediate
punishment ("SIP") program for a period of 24 months and was ordered to serve a five
(5) year term of probation. The Defendant received the same sentence at CC Nos.
2010-15147, 2010-15148, and 2010-14928. The SIP sentences were all ordered to be
served concurrently with one another. The sentences of probation were ordered to run
concurrently with one another as well.
 7
 example, at his MHC Review
treatment programs in which he was participating. For
 was unsuccessfully
Hearing on April 13, 2015, the court learned that the Defendant
 for "continued violations" of their
discharged from the Lafayette House, a halfway house,
 provide a drug screen and also
behavioral policy. Specifically, the Defendant refused to
 The Defendant then left
had a female visitor who was not permitted to be at the facility.
 officer that he had
the Lafayette House and ultimately admitted to his probation
 p. 2). His probation officer
relapsed, using Vicodin. (Review Hearing ("RH"), 4/13/15,

also learned from the police that there was possible drug
 paraphernalia and urine at the

 urine was thought to be
residence where the Defendant had been staying. The
 the Defendant to pass a urine
someone other than that of the Defendant to be used by
 resulted in immediate
screen. The use of this "fake" or fraudulent urine would have
 expelled on this basis
 expulsion from the WIC program. The Defendant was not
 by the time the probation
 because the evidence of the fake urine was no longer present
 12-13).
 officer went to recover it at Lafayette House. (Id. at 2-3,

 behavior, the Defendant
 When the court confronted the Defendant about his
 for his violations. (Id. at 3-
 apologized for his mistakes and attempted to make excuses
 that his recent conduct would not be
 5, 7, 10). The court instructed the Defendant

 if he continued to violate the
 tolerated, and it specifically warned the Defendant that,
 of the program and given a
 terms of the MHC program, he would be revoked out
 (Id. at 3, 9-10, 12-13).
 lengthy state sentence due to his six (6) burglary convictions.
 the potential consequences of his
 The Defendant told the court that he understood
 in the MHC program. (Id. at 10,
 actions and assured the court that he wanted to stay

 8
 a
13). The court then afforded the Defendant another opportunity to participate in

different treatment program, this time at the Cash Club, with the hopes that the

Defendant's behavior would improve and that he would take the MHC program more

seriously.

 Not even two (2) months later, the Defendant's probation officer informed the

court via email on May 13, 2015, that the Defendant tested positive for opiates at the

Cash Club. The Defendant admitted to the Cash Club that he used Percocet on May
 8,

2015, and the Defendant also tested positive for Morphine on May 12, 2015. The court

also learned that the Defendant had left the Cash Club several times without

permission. However, instead of incarcerating him or revoking the Defendant out of the

MHC program for his drug use and violation of the program rules, the court ordered the

Defendant to undergo more intensive drug and alcohol treatment and gave him yet
 7-
another chance to work on and overcome his addiction issues. (RH, 5/18/15, pp. 2-3,

10).

 Despite some indication that the Defendant was making headway in his recovery,

 his probation officer again informed the court via email on June 2, 2015, that the

 Defendant once again tested positive for opiates on June 1, 2015 at the Cash Club.

 The providers at the Cash Club found a bottle of urine in his possession, and the

 Defendant absconded from the Cash Club without permission after he provided a drug
 -

 positive urine sample. A warrant was issued for the Defendant's arrest because his

 9
 considered to be a danger to himself and
whereabouts were unknown, and he was
 the
 the warrant on June 3, 2015. Despite
others. The Defendant was arrested on
 urine
 and a second allegation of a "fake"
Defendant's drug use, behavior at Cash Club,
 with yet another opportunity to pursue
sample, this court provided the Defendant
 long-
 for another treatment program, this one a
treatment, placing him on the waiting list
 known as CORE.
term (six (6) month) intensive program

 over the course of the next few
 The Defendant showed some improvement
 the CORE program. He had positive
 months, and he was appearing to do well at
 2015 and November 23, 2015.
 reviews at his MHC hearings on October 13,
 to
 the Defendant relapsed and admitted
 Unfortunately, however, shortly thereafter,
 use
 while at CORE. The Defendant's drug
 using K-2, a synthetic marijuana substitute,
 at the Waterfront one evening, which
 had even caused him to be found unconscious
 hospital. (RH, 1/11/16, pp. 2-3). This
 resulted in him being transported to the
 well
 privileges at CORE, but this court, as
 development caused the Defendant to lose
 himself.
 him yet another chance to rehabilitate
 as the CORE program, agreed to give
 that
 mistakes and indicated that he understood
 The Defendant again apologized for his
 6-8).
 address his addiction issues. (Id. at 3-4,
 this would be his last opportunity to

 to his recovery, receiving certificates
 of
 Thereafter, the Defendant applied himself
 the
 CORE program. On February 22, 2016,
 recognition and achievement from the
 program and was discharged. The
 Defendant successfully completed the CORE

 10
Defendant was immediately moved into a recovery house, the Mt. Washington
 part-
Recovery House, to continue addressing his addiction. He also began working
 on a
time. While the Defendant appeared to be doing well at the Recovery House,
 his peer
superficial basis, there were deep concerns about him because he was missing

mentoring meetings, which were arranged through CORE. A scant two (2) months
 via email
after arriving at the recovery house, on April 29, 2016, the court was informed

that the Defendant was smoking K-2 at the Recovery House and that he had been
 morning
inappropriately running around the neighborhood during the late night/early

hours of April 28, 2016 and April 29, 2016. (RH, 5/31/16, pp.2-3). The Defendant's
 and he
behavior had frightened the neighbors and the residents of the recovery house,

was considered to be a high risk in the community. A warrant was issued for his arrest

 by using
on May 2, 2016 because he had again violated the terms of his MHC probation

illegal substances and leaving his court -ordered placement at the recovery house.

 Before the Defendant could be picked up on his MHC probation violation warrant,

he committed two (2) new burglaries on May 9, 2016. This criminal
 conduct resulted in

 5/31/16, p.3).
the charges that were filed at CC Nos. 2016- 7999 and 2016-6379. (RH,
 enough, the
As if his commission of two (2) additional burglary crimes was not serious
 dated May 9,
 Defendant had the audacity to publicly taunt the police in Facebook posts

 2016 and May 10, 2016. (Id. at 5). The May 9, 2016 post read as
 follows: "Th[]y call

 Tim[]
 mil th[] gingUrbrflad man. Catch m[] if u can. I'm running as fast as can.I

 11
 post stated: You
for naw scOnary and a nuw stat[] fuck Pgh.2 The May 10, 2016

gotta b[] quicle th[]n that lol. Gingarbrfiad man I told y'aIl
 motharfucles just
 made the news
Iflav[] m[] alon[]." (Id. at 5). To be sure, the Defendant famously
 at 3, 5). Given the
headlines with his new crimes and Facebook postings.3 (Id.
 and his overall behavior in
egregious nature of the Defendant's new criminal conduct,
 revoke him out of the MHC
the MHC program, the MHC team unanimously agreed to

program.

 this court is
 Having headed the MHC program for more than five (5) years,
 participants experience
intimately and uniquely aware of the struggles that its MHC
 mental health issues. For
when trying to battle their addictions, as well as address their
 but also works
this reason, this court not only sympathizes with their struggles,
 by offering support, by
especially hard to assist its participants during their relapses
 individual's unique needs, and
 attempting to specifically tailor recovery treatment to the
 in his or her recovery. The
 by providing appropriate monitoring to assist the defendant
 program unless the court has
 court does not resentence its participants out of the MHC
 unable to transition to a
 convinced itself that the participant is unwilling or genuinely

 page at
 2Posts retrieved from the Defendant's Facebook (emphasis
 (https://www.facebook.com/profile.php?id=100009760920629&fref=ts)
 added).

 3 http://pittsburgh.cbslocal.com/2016/05/11/burglary-suspect-accused-of-taunting-police-
 8/3/17); http://www.post-
 on-facebook-found-hiding-in-attic-arrested/ (last visited
 gazette.com/local/north/2016/05/19/Mount-Washington-burglary-suspect-known-as-
 (last visited 8/3/17);
 Gingerbread-Man-to-stand-trial-pittsburgh/stories/201605190142
 http://www.wtae.com/article/pittsburgh-s-slippery-gingerbread-man-fugitive-tracked-
 (last visited 8/3/17).
 down-after-throwing-shade-on-facebooW7480034
 12
 to
 that a defendant is unwilling or unable
sober, law-abiding lifestyle. This determination
 until this court has satisfied itself
 that every
make a positive change is not made
 has been afforded the defendant.
 While
available and appropriate treatment opportunity
 comfort
 fail out of the program, the court takes
it is always upsetting to see participants
 its people, prior
in knowing that it attempted to utilize
 every applicable resource to help

to revoking them from MHC.

 of
 relapses and technical violations
 Accordingly, despite the Defendant's multiple
 and help him
 attempts to work with the Defendant
 the program, the court persisted in its
 so, this court repeatedly warned the Defendant that
 attain his treatment goals. In doing
 of his
 rules and his failure to take advantage
 his failure to abide by the program
 serious consequences, perhaps including
 treatment opportunities would result in
 time. (RH, 4/13/15, pp. 3, 9-13); (RH, 5/18/15,
 consecutive sentences and state prison
 full awareness of the consequences of any new and
 pp. 3-4). However, despite his
 to the
 use continued and his behavior escalated
 serious violations, the Defendant's drug
 advantage of
 burglaries in May of 2016. He took
 point that he committed two (2) new
 an
 him, while he repeatedly demonstrated
 this court's willingness to work with
 recovery seriously.
 unwillingness to take his treatment and

 society at risk and resulted in the
 Moreover, the Defendant's behavior placed
 also
 the public. His new criminal conduct
 victimization of innocent members of
 figures. The
 disregard for the law and authority
 demonstrated a complete and utter

 13
 and
 and serious crimes while he was on probation
Defendant not only committed new
 boldly put his crimes on public display,
while he had a warrant out for his arrest, he
 by
 to believe that his behavior was motivated
mocking and taunting the police. It is hard
 the
 acknowledged prior relapses and accepted
a simple relapse given that he generally
 the
 assistance. In this instance, however, the Defendant remained on
court's treatment
 hid from law enforcement, did not seek
run, committed new burglaries, actively
 out at law enforcement. By doing so, the
treatment assistance and publicly lashed
 his
 respect for the law, this court, and
 Defendant highlighted his complete lack of
 crimes. This
 a substantial lack of remorse for his
 treatment providers and demonstrated
 behavior.
 was criminal behavior, not relapse

 at his sentencing on October 13,
 For these reasons, the Defendant's allocution
 actions
 court focused more on the Defendant's
 2016 had little impact on this court. This
 as opposed to his proffered excuses
 for his
 over the course of his MHC participation,
 pp. 6-16). The Defendant's actions
 behavior. (Sentencing Hearing, 10/13/16,
 or incapable of transitioning to a law-abiding
 communicated that he is either unwilling
 sober, law-
 the Defendant's failure to transition into a
 life. Whichever might be the case,

 opportunities that he was afforded makes him a
 abiding citizen despite the numerous
 Defendant's continued use and abuse of Illegal
 threat to both himself and society. The
 and violence from others. As far as society
 substances subjects him to risk of overdose
 new crimes
 time of sentencing that the Defendant's
 is impacted, this court noted at the
 of security and
 material possessions, but their sense
 take from his victims not only their
 their homes.
 should feel those things most acutely,
 safety as well, in the place that they

 14
 despite receiving drug and
(Id. at 14-16, 26). The Defendant's repeated burglaries,

 and the support of Justice Related
 Services,
alcohol treatment, mental health treatment
 made the conscious choice to engage
probation and this court, make it clear that he has
 individuals and society as a whole.
in criminal behavior and continue to victimize

 for his past criminal conduct
 The Defendant's prior, more lenient sentences
 and that is yet another reason why a
clearly failed to deter him from criminal activity,
 of
 The Defendant had been convicted
lengthier sentence was warranted at this time.
 few years, and his demonstrated failure to
 eight (8) burglary cases in a span of only a
 though he was fully aware that much lengthier
 be deterred from criminal activity, even
 criminal behavior, further makes him a
 sentences awaited him if he continued Ms

 danger to society.

 is not entitled to a concurrent sentencing
 Finally, the court notes that a defendant
 certainly was not deserving of a "volume
 scheme, and the Defendant in this case
 that involved, inter alia, breaking into a victim's
 discount" for committing serious crimes
 head with a brick, and then robbing him of
 apartment, repeatedly beating him over the
 Hoaq, 665 A.2d 1212, 1214 (Pa. Super. 1995)
 his belongings. See Commonwealth v.
 in imposing a sentence the court
 has
 ("The general rule in Pennsylvania is that
 it concurrent with or consecutive to other
 discretion to determine whether to make
 previously imposed.");
 sentences then being imposed or other sentences
 22 (Pa. 1994) (raising a concern that
 Commonwealth v. Anderson, 650 A.2d 20,

 15
 criminal acts that arose out of
defendants not be given "volume discounts" for multiple

one larger criminal transaction).

 to twelve (12) years of
 Accordingly, the aggregate sentence of six (6)
 in this case. In
imprisonment was justified by the totality of the circumstances
 the eight (8) burglary cases that
determining what sentence would be appropriate for
 the statutory factors set forth
were before this court for sentencing, the court considered
 knowledge of the Defendant's history,
in 42 Pa. C.S.A. §9721(b). Given its detailed

 this court made an informed decision
background, behavior, and rehabilitative needs,
 to address the Defendant's
 that a lengthy sentence was appropriate and necessary
 him with the necessary time to address
 continued criminal conduct, as well as provide
 and temptations of the
 his mental health and addiction issues, without the distractions
 the Defendant's allocution at
 community at large. While the court considered
 circumstances, it found that
 sentencing and the mitigating aspects of the Defendant's
 considerations outlined above.
 the mitigating factors did not outweigh other relevant
 The Defendant's overall conduct
 (Sentencing Transcript, 10/18/16, pp. 10-14).
 a disinterest in meaningfully
 demonstrated a serious disregard for the law and
 turn, created a substantial need to
 addressing his rehabilitative needs, and this, in
 demonstrated failure to be
 protect the public from his behavior. The Defendant's
 danger that he poses to society. For all of
 deterred from criminal activity highlights the
 in imposing sentence.
 these reasons, this court did not abuse its discretion

 16
II. CONCLUSION

 The Defendant's contention on appeal is without merit. Based on the foregoing,

the sentence imposed was not an abuse of discretion. Accordingly, this court

respectfully requests that the sentence in this case be upheld.

 BY THE COURT:

 17