J-S39015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
:
v.          :
:
:
ZAHMIR WHITE          :
:
Appellant   :   No. 3186 EDA 2019

Appeal from the Judgment of Sentence Entered June 21, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004999-2018

BEFORE:   LAZARUS, J., OLSON, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:        **FILED NOVEMBER 06, 2020**

Zahmir White appeals from the judgment of sentence, entered in the

Court of Common Pleas of Philadelphia County, after a jury convicted him of

voluntary manslaughter,[1] attempted murder,[2] aggravated assault,[3] firearms

not to be carried without a license,[4] carrying firearms on public streets in

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2503(b).

[2] 18 Pa.C.S.A. §§ 901, 2502.

[3] 18 Pa.C.S.A. § 2702(a).

[4] 18 Pa.C.S.A. § 6106.

Philadelphia,[5] possession of instruments of crime ("PIC"),[6] and recklessly endangering another person ("REAP").[7] Upon careful review, we affirm.

The Honorable Glenn B. Bronson set forth the facts of this matter as follows:

> On Easter Sunday, April 1, 2018, the decedent, William Bethel, went to South Street in Philadelphia with his cousin[,] Samir Whitaker, and his two friends, Christopher Elliott and Khaleaf Sistrunk, to buy new shoes. Bethel had just turned 16 years old and used money he had received for his birthday to buy the shoes. After purchasing the shoes, the young men went to a massage parlor [at] 810 South Street. Sometime between 5:00 p.m. and 6:00 p.m., Bethel and Sistrunk entered the massage parlor while Whitaker and Elliott remained outside. While waiting outside, Whitaker saw [White] and Andre Thomas walking up South Street towards the massage parlor. When Whitaker saw [White], he entered the massage parlor to tell Sistrunk that [White] was outside. Sistrunk, who had been involved in an ongoing dispute with [White], and Bethel followed Whitaker outside. As [White] and Thomas continued up South Street and walked pas[t] Elliott, Sistrunk, Whitaker and Bethel, [White] and Thomas exchanged words with Elliott and Sistrunk. [White] and Thomas stopped and more words were exchanged.
>
> Believing that Elliott was reaching for a weapon in his book bag, [White] pulled a gun from the area of his waistband. Seeing [White] pull out his gun, Whitaker and Sistrunk ran into the massage parlor. Elliott and Bethel began to run away from [White] down the sidewalk. [White] then fired his weapon three times at Elliott, missing him. One of the bullets struck Bethel in his lower back above his buttocks, while he was still running away from [White].

---

[5] 18 Pa.C.S.A. § 6108.

[6] 18 Pa.C.S.A. § 907(a).

[7] 18 Pa.C.S.A. § 2705.

Responding officers rushed Bethel to Thomas Jefferson University Hospital[,] where doctors performed numerous surgeries in an attempt to save his life. Two days later, on April 3, 2018, Bethel was pronounced dead. The cause of death was complications from his gunshot wound.

After shooting Bethel, [White] fled from the scene. As he fled, he discarded his firearm, which he did not have a license to carry, in a dumpster around [Sixth] and Queen Streets. After a highly[-]publicized effort to find [White], police discovered him in the home of his aunt, Quanita Green, on May 23, 2018. The firearm [White] claimed to have seen in Elliott's book bag was never discovered.

Trial Court Opinion, 1/8/20, at 2-4 (footnotes and citations to record omitted).

On April 18, 2019, a jury convicted White of the above offenses. On June 21, 2019, Judge Bronson imposed consecutive terms of incarceration as follows: 10 to 20 years for voluntary manslaughter (Bethel); 10 to 20 years for attempted murder (Elliott); 3½ to 7 years for carrying a firearm without a license; and 1½ to 3 years for carrying a firearm on a public street in Philadelphia. The court imposed no further penalty for PIC, and White's convictions for aggravated assault and REAP merged for purposes of sentencing. White's post-sentence motions were denied on October 8, 2019. This timely appeal followed. Both White and the trial court have complied with Pa.R.A.P. 1925.

White raises the following claim for our review:

Was the trial court's departure from the aggravated range of the sentencing guidelines, including imposition of the statutory maximum for voluntary manslaughter, attempted murder, and firearms not to be carried without a license, with all sentences running consecutively[,] a manifest abuse of discretion, in that it imposed the functional equivalent of a life sentence for a first[-]time offender while failing to give adequate weight to [White's]

display of remorse, his young age, his strong family support, and the difficult circumstances he encountered as a child (including being shot)?

Brief of Appellant, at 3.

White's claim challenges the discretionary aspects of his sentence. Such a claim does not entitle an appellant to review as a matter of right. **_Commonwealth v. Swope_**, 123 A.3d 333, 337 (Pa. Super. 2015). Rather, an appellant must properly invoke this Court's jurisdiction by: (1) filing a timely notice of appeal, **_see_** Pa.R.A.P. 902 and 903; (2) preserving the issue at sentencing or in a motion to reconsider and modify sentence, **_see_** Pa.R.Crim.P. 720; (3) including in his brief a statement pursuant to Pa.R.A.P. 2119(f); and (4) raising a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. **_Id._**

Here, White filed a post-sentence motion for reconsideration of sentence, followed by a timely notice of appeal to this Court. He has also included in his brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence pursuant to Rule 2119(f). Accordingly, we must now determine whether White has raised a substantial question that his sentence is not appropriate under the Sentencing Code.

In his Rule 2119(f) statement, White asserts that the trial court's "imposition of consecutive sentences creating an aggregate sentence of 25 to 50 years['] imprisonment" was manifestly excessive. Brief of Appellant, at 10. He argues that the court abused its discretion by imposing statutory

maximum sentences for voluntary manslaughter, attempted murder and firearms not to be carried without a license, *see id.*, and that those sentences, as well as his sentence for carrying firearms on the public streets of Philadelphia, were "well above the upper end of the aggravated range of the sentencing guidelines." *Id.* White further asserts that, in imposing those sentences, the court failed to give adequate weight to mitigating factors, including his display of remorse, his young age, his family support, and his difficult childhood circumstances. *See id.*

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (citation and quotation marks omitted).

Excessiveness claims based solely on the application of consecutive sentences generally do not raise a substantial question for review. *Commonwealth v. Moury*, 992 A.2d 162, 171-72 (Pa. Super. 2010). Excessiveness claims raise a substantial question only in the most extreme circumstances, such as where the aggregate sentence is unduly harsh considering the nature of the crimes and the length of imprisonment. *Id.* *See also Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013)

(**Dodge IV**) (finding substantial question where "[t]he decision to sentence consecutively raises the aggregate sentence to, what appears on its face to be, an excessive level in light of the criminal conduct at issue in the case.").

However, a claim that a sentence is excessive, paired with a claim that the trial court failed to consider mitigating factors, presents a substantial question. **See Commonwealth v. Johnson**, 125 A.3d 822 (Pa. Super. 2015) (excessive sentence claim, in conjunction with assertion that sentencing court failed to consider mitigating factors, raises substantial question). Thus, we grant White's petition for allowance of appeal and address the merits of his claim.

We begin by noting our standard of review in sentencing matters:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa. Super. 2014). Deference is accorded to the trial court's pronouncement of sentence because of the perception that the trial court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. **Commonwealth v. Ward**, 568 A.2d 1242, 1243 (Pa. 1990). "When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.A. § 9721(b), that is, the

protection of the public, [the] gravity of [the] offense in relation to [the] impact on [the] victim and community, and [the] rehabilitative needs of the defendant[.]" ***Commonwealth v. Fullin***, 892 A.2d 843, 847 (Pa. Super. 2006). Furthermore, "[a] trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range." ***Commonwealth v. Stewart***, 867 A.2d 589, 593 (Pa. Super. 2005) (citation omitted). The sentencing court must, however, consider the sentencing guidelines. ***See Fullin***, 892 A.2d at 847. Finally, where the court is in possession of a presentence report ("PSI"), we "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Watson***, 228 A.3d 928, 936 (Pa. Super. 2020), quoting ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988).

When determining if a sentence is manifestly excessive, "the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference." ***Commonwealth v. Mouzon***, 828 A.2d 1126, 1128 (Pa. Super. 2003). When imposing sentence, the court has discretion to run each sentence concurrently or consecutively to other sentences being imposed. ***Id.*** at 1130. This Court has also "expressed concern against running sentences concurrently by way of habit, lest criminals receive volume

discounts for their separate criminal acts." ***Id.*** Consecutive sentences will not be disturbed on appeal unless the sentence is "grossly disparate to the defendant's conduct." ***Commonwealth v. Gonzalez-Dejusus***, 994 A.2d 595, 599 (Pa. Super. 2010).

With regard to the Sentencing Guidelines, we have previously stated:

> When imposing a sentence, the sentencing court is required to consider the sentence ranges set forth in the Sentencing Guidelines, but it is not bound by the Sentencing Guidelines. ***Commonwealth v. Yuhasz***, [] 923 A.2d 1111, 1118 ([Pa.] 2007) ("It is well established that the Sentencing Guidelines are purely advisory in nature."); ***Commonwealth v. Walls***, [] 926 A.2d 957, 965 ([Pa.] 2007) (referring to the Sentencing Guidelines as "advisory guideposts" which "recommend . . . rather than require a particular sentence"). The court may deviate from the recommended guidelines; they are "merely one factor among many that the court must consider in imposing a sentence." ***Yuhasz***, 923 A.2d at 1118. A court may depart from the guidelines "if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community." ***Commonwealth v. Eby***, 784 A.2d 204, 206 (Pa. Super. 2001). When a court chooses to depart from the guidelines, however, it must "demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines." ***Id.*** Further, the court must "provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines." 42 Pa.C.S. § 9721(b).

***Commonwealth v. Durazo***, 210 A.3d 316, 320 (Pa. Super. 2019) (brackets omitted).

- 8 -

Here, the trial court's sentence fell outside the aggravated range of the Sentencing Guidelines.[8] Thus, our task is to determine whether White's sentence is unreasonable. *See* 42 Pa.C.S.A. § 9781(c)(3) (Court shall vacate sentence where defendant sentenced outside guidelines and sentence is unreasonable). Our Supreme Court has noted that the term "unreasonable" generally means "irrational" or "not guided by sound judgment." *Walls*, 926 A.2d at 963. Moreover, "rejection of a sentencing court's imposition of sentence on unreasonableness grounds [should] occur infrequently, whether it is above or below the guideline range." *Id.* at 964.

The reasonableness inquiry is a "fluid" one, based partially on the factors set forth in section 9781(d) of the Sentencing Code, which provides that when we review the record, we shall have regard for:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

*Commonwealth v. Dodge* (*Dodge II*), 957 A.2d 1198, 1200 (Pa. Super. 2008); 42 Pa.C.S.A. § 9781. A sentence can also be deemed unreasonable if the appellate court finds that it was imposed without express or implicit consideration of the section 9721 sentencing factors. *Walls*, 926 A.2d at 964;

---

[8] White received an aggregate sentence of 25 to 50 years. An aggravated range sentence would have amounted to 20 to 40 years.

***see also Commonwealth v. Coulverson***, 34 A.3d 135, 150 (Pa. Super. 2011) (finding sentence clearly unreasonable because trial court did not consider all statutory factors).

Here, the trial court was in possession of a PSI and considered it, as well as the entire record, in crafting White's sentence. ***See*** N.T. Sentencing, 6/21/19, at 64-65. The court considered numerous letters submitted on White's behalf, as well as statements given by him and his family members at sentencing. ***See id.*** at 65. The court heard argument from White's counsel, who advocated zealously on his client's behalf. ***See id.*** at 22-25. Prior to imposing sentence, Judge Bronson provided an extensive statement explaining in detail the rationale for his sentence, including a discussion of the section 9721 sentencing factors, mitigating and aggravating factors, and the reasons for his departure from the guidelines:

> THE COURT: Let me start out by saying what I'm going to consider in determining an appropriate sentence. I'm going to take into account everything that was submitted during the history of this case. Everything that was presented during the jury trial. All of the information in the presentence report which I have carefully considered. Everything that was in the investigation of his prior record score. All the materials that were submitted to me for sentencing. And everything that was presented during the sentencing hearing.
>
> In particular, I've read and carefully considered all the letters that were submitted by both sides as well as the statements that were submitted by both sides. And of course, as I'm required to do, I've carefully considered the sentencing guidelines.
>
> This is, of course, a tragic case that has had horrible consequences on both sides of the aisle here. It's my difficult job to determine what an appropriate sentence is[,] but I don't do this in a vacuum.

- 10 -

I'll start with the things that I'm required to consider[,] which are statutory factors that must be considered for every sentencing.

The first is the need for the protection of the public. And given the facts of this case, I do have some concern for the protection of the public. People of ordinary sensibilities don't act like the defendant acted on that one day. I know it's been described as one silly incident. But to behave in the manner in which he did on that day is far beyond the norm of one silly incident. Something that has very serious consequences for almost everybody in this room. And someone who could commit that kind of an act under the circumstances presented during this trial gives me some concerns there.

The next factor is the gravity of the offense in relation to its impact on the victim and the community. And it's a homicide. So the victim is gone forever. So the impact on the family has been— families always suffer greatly in the many cases I've sat through. This is an extraordinary situation where it's a very special young man. Very young. Sixteen. He seemed to have everything going for him except being out on South Street that day. And I tru[]ly believe the heartfelt expressions from the family members as to the impact on them.

And the statute requires the impact on the community, which is something that I considered. I received letters from representatives and the members of the community. This case has had [a] very significant impact on that community, which is a very important community of this city. It's a place where people go and congregate. Tourists go there. Residents go there. I heard from several people representing the community who said this case has had a lasting negative effect. That something like this could happen on an Easter Sunday in broad daylight is something that people recognize. And clearly and understandably, it has affected that community.

I'm also required to consider the rehabilitative needs of the defendant, and I have considered that. [I have also considered] [a]ll the mitigated evidence that was submitted on his behalf including the very heartfelt statements that I received from members of his family[—t]he people on the left side of me here. []

There are[,] as both sides pointed out[,] aggravating factors and mitigating factors. I'm going to mention some aggravating factors here which are very important and I believe would justify a

departure above the guidelines in this case. First of all, very significantly that the defendant's conduct on that day endangered the lives of not just the people he was shooting at, but this was a very crowded commercial area. A Sunday afternoon on South Street. The defendant shooting at two men who were running away from him. Endangered the lives of everybody on that block. And in fact, as the evidence shows, he wound up killing somebody that was not his intended victim is what it seems like. He was shooting for the other man, for Mr. Elliot[t]. But it's very fortunate that nobody else was killed that day. That is a factor that the guidelines both contemplate.

In addition, he made a decision to take that loaded illegal gun and carry it with him in that area on that day. And these facts demonstrated that he was ready to use it. It was ready to go. It was loaded. And he was willing to pull it out and to fire it. And the fact that he would bring that weapon onto that street on an Easter Sunday is something that I view to be an aggravating factor. I think the impact on the community is an aggravating factor. This has[,] as I mentioned previously[,] an extraordinary impact on that community.

And I also think the victim impact is something that brings this case a little bit beyond the norm. Like I said, every case is tragic. A young 16-year-old doing all the right things. Being killed for absolutely no reason. Absolutely not provoking anything in this case. Just being there and running away and being shot in the back as he tried to get away, takes this beyond what I consider to be the heartland of voluntary manslaughter.

There are mitigating factors in this case which are important. He has extraordinary support from his family and his community. As the presentence report points out and is argued today, he has had difficulties in his own life. And he is a special person to his family. He made that decision to get that firearm, take it to South Street and [was] willing to pull it out and start shooting at people. That's not just one silly unfortunate incident. That's a life-changing event that requires me to reflect that in my sentence.

N.T. Sentencing, 6/21/19, at 64-70.

In light of the foregoing, and our review of the record as a whole, we do not find White's sentence to be unreasonable. *See* 42 Pa.C.S.A. § 9781(c)(3).

White brandished an illegal gun during the daytime in a crowded commercial area on a major holiday and fired it multiple times in a haphazard manner. In doing so, he killed an innocent 16-year-old young man as he was attempting to flee, wounded another, and placed the lives of innocent bystanders at risk. While White's sentence is clearly significant, it does not, as he argues, amount to the "functional equivalent of a life sentence," as he will be eligible for parole at the age of 44. Brief of Appellant, at 14. The record "reflects the court's reasons and its meaningful consideration of the facts of the crime and the character of the offender." *Commonwealth v. Malovich*, 903 A.2d 1247, 1253 (Pa. Super. 2006). Accordingly, White is entitled to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/20